WAYMOND M. BROWN, Judge
Appellant Melita Cox (now Nicola) appeals the order of the Washington County Circuit Court denying her motion for relocation and modification of visitation. On appeal, she argues that the circuit court "improperly shifted the burden to Ms. Nicola to prove that her proposed move to Winnipeg, Canada, would be advantageous to herself and the children." In light of the Arkansas Supreme Court's decision in Hollandsworth v. Knyzewski ,[1] we agree and hold that the circuit court clearly erred in denying Melita's request to relocate; therefore, we reverse and remand.
The parties were divorced in August 2016. Born of the marriage were two children of whom Melita was awarded primary custody subject to appellee Nathan Cox's visitation rights. In July 2017, Melita filed a motion to relocate, expressing her desire to move the children, M.C. (11) and *713 F.C. (3), to Winnipeg, Canada, for "better education, financial and employment opportunities." Nathan responded, objecting to the relocation and asserting that it would have a "detrimental effect" on his relationship with the children. A hearing was held on January 3, 2018.
At the hearing on the motion to relocate, both Melita and Nathan testified. Melita stated that following the divorce in 2016 she was awarded primary custody of the children while Nathan was awarded visitation on alternating weekends, 6:00pm-8:00pm on Tuesdays, and as provided in the court's standard visitation schedule for holidays.
Melita testified that she first notified Nathan on May 18, 2017, via text message regarding her desire to move and request for a "different visitation schedule." She stated that he responded that he wanted her to be happy and wished her well, which she took as an indication that he was supportive and consented to the move. Melita again contacted Nathan via text on June 27, 2017, concerning relocation and the need for a "revised long-distance visitation schedule." At that time, Nathan still did not object to Melita's proposed move with the children.
On July 7, 2017, Melita prepared a letter expressing her "intention to move to Winnipeg-Manitoba, Canada" for employment and educational opportunities. She expressed her willingness to work with Nathan in coordinating visitation and transporting the children between Canada and Arkansas.[2] Melita specifically provided:
I am willing to drive half way the distance between Fayetteville, Arkansas and Winnipeg, Canada every summer until the children turn 18 years old. They can spend the entire summer vacation with the non-custodial parent, Nathan Lloyd Cox, from first weekend of summer vacation until the last Friday preceding the start of the new school year.
She further offered electronic communication with the children "by means of telephone, mobile phone, text messaging, [and] video conference" to supplement traditional forms of visitation. Still, there was no objection to the relocation from Nathan. Melita filed a motion for relocation and modification of visitation on July 14, 2017.
Melita testified that on July 19, 2017, Nathan texted her the following:
We need to talk sometime. I wanna know all details. I will follow any path you think is best for you and kids. They will grow up soon and I don't want to be the reason why they look down on me. One life we all have. Let's think about kids. I have you're [sic] back on any dission [sic] if it's safe for my kids. This message was the hardest thing I ever have done in my life.
They then arranged to meet to discuss the details; however, the meeting did not happen. The following week, Nathan informed Melita that he would "meet [her] in front of the judge."
Melita testified that she wished to move to Canada to further her education, beginning with completing her Bachelor of Science degree and then moving on to medical school, stating that it "will be better for the kids if I get a better job and have a more stable financial situation." Melita also stated that moving to Canada would allow her parents to be involved in the children's lives. She explained that her parents live in Romania and that it had been difficult for them to obtain a visa to *714 visit them in the United States; however, Romanians can travel to Canada without a visa.
Melita stated that she had already secured a one-bedroom apartment in Winnipeg and had placed a $ 450 deposit on it. Melita provided her acceptance letter to the University of Manitoba. F.C. is not yet of school age, but M.C. would attend George Waters Middle School in Winnipeg. Upon inquiry, the principal of George Waters Middle School informed Melita that M.C. should not have any academic problems with transitioning to the school. Melita obtained the school calendar and calculated a total of 95 days of school break during which Nathan could exercise visitation with the children (spring break, Christmas break, and summer). Under the current visitation schedule, Nathan receives 108 days of visitation. Melita explained that she would encourage the use of calls, messages, and video chat to supplement Nathan's interaction with the children.
On cross-examination, when asked if there was a medical school in Arkansas, Melita replied that there is not one in Fayetteville, but there is one in Little Rock-UAMS. However, "I did not apply to UAMS. My intention was to relocate, so I applied to the University of Manitoba." She further acknowledged that while many states may have medical schools, she did not apply to those schools because "[m]y focus was to relocate to Winnipeg, Canada." Additionally, "[a]s to whether I have a basis of comparison to attest that the educational opportunities afforded by the University of Manitoba are superior to any opportunities I would have at UAMS or any other state that is contiguous, the point was not to compare universities. The point was to attend a university in the same city where I would be moving."
Nathan also testified at the hearing. He stated that Melita "is a great mom. I do not have any problem with the way she has cared for the children as a mother, other than taking them away from me. As to whether she will continue what she is doing now if she moves to Canada, she will do great wherever she goes." He went on to say that he changed his mind multiple times about Melita relocating with the children. Nathan also stated that he had initially agreed with her moving to Canada because "I wanted to do what was best for the kids."
Nathan testified that he believes that Melita does want to further her education and attend medical school, as they had discussed it many times during their marriage. He also believes that Melita obtaining a medical degree would have a positive impact on the children's future. However, while agreeing that she will need help, he stated that he believed that she could get the extra help where they currently live.
Nathan went on to acknowledge that Melita had never denied him visitation with the children, had never denied a telephone call with the children, and had never denied any other contact with the children. He further stated that the "92 days[3 ] of break on the George Waters' school calendar are not far off" from the number of days he is awarded visitation under the current custody agreement. However, he argues that getting blocks of visitation instead of alternating weekend visitation "would not be close to maintaining an equivalent relationship that I have with them. That is why I oppose it." In closing, Nathan testified, "I still believe that no matter where she is, she would take the best care of my kids she possibly could. She would always provide for them."
*715 Following the hearing, the circuit court entered an order denying Melita's motion for relocation and modification of visitation. She now appeals.
In reviewing child-custody cases, we consider the evidence de novo, but the circuit court's findings of fact will not be reversed unless they are clearly erroneous or clearly against the preponderance of the evidence.[4] A finding is clearly erroneous when, although there is supporting evidence in the record, the appellate court viewing the entire evidence is left with a definite and firm conviction that a mistake has been committed.[5] We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses.[6]
Hollandsworth is the controlling case regarding the relocation of custodial parents.[7] Hollandsworth expressly pronounced that there is "a presumption in favor of relocation for custodial parents with primary custody. The noncustodial parent should have the burden to rebut the relocation presumption. The custodial parent no longer has the responsibility to prove a real advantage to herself or himself and to the children in relocating."[8] The court recognized that divorce not only changes the relationship between parents, but it also inevitably changes the nature of the relationship between parents and their children. The Hollandsworth court further stated that it was "a matter of common knowledge that at least one parent must necessarily forfeit some individual rights to the constant companionship of minor children when a divorce decree is granted."[9]
In recognizing the custodial parent's right to relocate with his or her children, the Hollandsworth court set forth the following factors to be considered in determining the best interest of the child in the matter of a request for relocation: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; (5) the preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.[10]
In its order denying Melita's motion for relocation and modification of visitation, the circuit court found, "for the reasons recited in the Court's bench opinion, the same being incorporated herein as if set out word for word," that the "requested move of the plaintiff is speculative at best, that such a move would not be in the best interests of the parties' minor children, and that the defendant has successfully rebutted any presumption that might otherwise be afforded to the plaintiff in regard to her requested relocation and the resulting modification of the Court's prior orders."
As directed in the January 24, 2018 order, we turn to the circuit court's bench *716 opinion to better understand the court's specific reasoning for denying Melita's relocation request. At the close of the hearing, the circuit court made the following statements:
• This move is, in my opinion from the testimony, speculative at best as to whether or not it would be beneficial to you or your children.
• So you're talking about uprooting them, taking them out of their home, your children away from their father without any type of guarantee.
• There is no confirmation whatsoever at all in reference to you being able to find a job, much less a job where you can make as much money or more money than you are currently making....
• I just-I think this Motion to Relocate, at the best, is premature and very speculative.
• I also found it disturbing that there was-you have no idea what they're even teaching in the Canadian school that you've looked at.
• All of the opportunities that you are talking about are not only available here, but are easier here for you to get than this very speculative move to Canada.
The circuit court then went on to find:
So I do believe that the Respondent has rebutted the presumption that it would be in the children's best interest in order to relocate. In order-in reference to the Hollingsworth [Hollandsworth] five factors, (a) the reason for relocation, I have not heard any good reason for relocation. In fact, I've heard tons of reasons why it would be much smarter and much better for you and your children if you relocated say, for example, to Little Rock or some other similar place.
Two, educational, health and leisure opportunities available in the place of relocation, I've heard nothing in reference to this being a better school than the current Fayetteville schools that your child is attending.
Health, leisure opportunities, I also-I don't believe that I've heard anything in reference to those being better in the Canada area.
Visitation and communication schedule for the noncustodial parent, based on the fact that it appears you would have to take a significant pay cut and you would not have child care at least for what you say, nine out of 12 months probably out of the year, I don't think that that would be a better situation for the noncustodial parent. I think it would significantly inhibit his visitation. I found it very telling that his son makes sure and calls him at least once a week to talk to him. I think that also shows the type of relationship they have and that he is wanting to keep in contact even when they don't have visitation scheduled.
The effect of the move on the extended family relationship, I believe that would be significantly detrimental because there are extended family relationships here in reference to Mr. Cox's mom and, obviously, their half-sister.
And then preference of the child, obviously is not appropriate to be weighed in this case because of the children's age and they have not testified today.
A review of the circuit court's oral ruling leaves no doubt that the court placed the burden on Melita to prove that the move to Canada was "advantageous" or "better." However, Hollandsworth makes clear that as the custodial parent, it was not her burden to carry. The presumption in favor of relocation is automatic. Melita did not have to prove that the *717 move would be "beneficial" or that there are no "better options" than the location that she chose. Nor did she have the burden to show that the Canadian school is better than the Fayetteville school, or that she will make more money in Canada, etc. Further, case law does not require that a custodial parent with primary custody have concrete plans, instead of "speculative" ones, when contemplating relocation.
Step one in the process was Melita's Motion for Relocation and Modification of Visitation. Upon that motion, she was afforded the presumption in favor of relocation. Nothing more was required of Melita. Next, Nathan, as the noncustodial parent, had the burden to provide evidence to rebut the presumption.
Applying the Hollandsworth factors to the evidence presented at the hearing, Nathan unequivocally failed to rebut the presumption in favor of relocation. First, he presented no testimony disputing the validity of Melita's reason for wanting to relocate. In fact, not only did he acknowledge that he believed she genuinely wants to attend medical school, he also stated that by going to medical school, Melita could better provide for the children's future. Nathan provided no testimony regarding the quality of the schools in either location; he likewise failed to provide any testimony regarding the availability or caliber of the health and leisure opportunities in either location; and he admitted that Melita had never denied him access to the children and he did not think she ever would. As to the circuit court's finding that relocation would be detrimental to existing relationships the children have with Nathan's extended family in Arkansas, we hold that the court failed to consider the benefit of establishing relationships with members of Melita's family, with whom they have been unable to bond.
From his testimony, Nathan's only concern with relocation is the effect it will have on his visitation with the children, arguing that he will not be able to maintain an "equivalent relationship" with them due to the distance. However, that is not the standard. Hollandsworth presupposes that visitation and communication between the child and the noncustodial parent will be impaired.[11] Nevertheless, "if there continues to be meaningful visitation, the presumption in favor of relocation is not rebutted."[12]
Here, Melita testified that Nathan could exercise visitation with the children every summer from the first weekend of summer vacation until the last Friday preceding the start of the new school year, as well as every spring break and Christmas break. She further indicated her willingness to meet halfway to facilitate the visitations. Melita also offered electronic communication to supplement traditional forms of visitation. As Nathan admitted, the ninety-five days contemplated under the proposed visitation schedule is not "far off" from the number of days of visitation he currently receives with the children. Under similar circumstances, we have found such visitation to be meaningful, and we so hold the same to be true in this case.[13]
Upon applying the law as set forth in Hollandsworth , we hold that the circuit court clearly erred in ruling that Nathan rebutted the presumption in favor of allowing *718 Melita to relocate, as he offered no evidence that the move was against the children's best interest. Additionally, we hold that the circuit court's denial of Melita's relocation motion due to her "speculative" plans with no "guarantee" amounted to an improper shifting of the burden to her to prove that her proposed move offered some advantage to her or to the children.
Accordingly, we reverse and remand for entry of an order allowing Melita to immediately relocate to Canada with the children.
Reversed and remanded.
Gruber, C.J., and Whiteaker and Vaught, JJ., agree.
Gladwin and Murphy, JJ., dissent.

353 Ark. 470, 109 S.W.3d 653 (2003).

According to Melita's testimony, a Google search revealed that Winnipeg is 1051 miles from Northwest Arkansas and approximately a 15-hour and 40-minute drive.

According to Melita, the school breaks would total 95 days per year.

Hodge v. Hodge , 97 Ark. App. 217, 245 S.W.3d 695 (2006).

Id.

Id.

353 Ark. 470, 109 S.W.3d 653.

Id. at 476, 109 S.W.3d at 657.

Id. at 485, 109 S.W.3d at 663 (quoting Walter v. Holman , 245 Ark. 173, 431 S.W.2d 468 (1968) ).

Id. at 485, 109 S.W.3d at 663-64.

Fischer v. Smith , 2012 Ark. App. 342, 415 S.W.3d 40.

Id.

See Fischer , supra (finding that a noncustodial parent could have meaningful visitation with his daughter if she and her mother relocated to the Virgin Islands with proposed visitation at Christmas break, summer break, and two other weeks per year).