2012 Ark. App. 342

**Erin M. FISCHER, Appellant**

v.

**Damon L. SMITH, Appellee.**

**No. CA 11–982.**

Court of Appeals of Arkansas.

May 16, 2012.

Stephen M. Sharum, Aubrey L. Barr, Fort Smith, for Appellant.

Rex W. Chronister, Fort Smith, for Appellee.

JOSEPHINE LINKER HART, Judge.

Erin M. Fischer appeals from the denial of her petition to relocate to the United States Virgin Islands with her minor child. On appeal, she argues that the trial court erred in denying her permission to relocate because it erred in its application of the law as promulgated in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), and in making the factual findings that supported its decision. We reverse and remand.

Although we review traditional equity cases de novo, we will affirm the trial court's findings of fact unless they are clearly erroneous or clearly against the preponderance of the evidence. *Hartsell*

*v. Weatherford,* 2012 Ark. App. 164, 2012 WL 559951 (unanimous en banc decision). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing the trial court's findings, we give due deference to the trial court's superior position to determine the credibility of the ⌊2witnesses and the weight to be accorded to each witness's testimony. *Id.* However, we give a trial court's conclusions of law no deference on appeal. *Id.*

This case involves the parties' minor child, M.S., who was born on June 10, 2008. Subsequently, the parties married on May 16, 2009, and divorced on July 21, 2010. In the divorce decree, appellee Damon Smith's paternity was acknowledged, and he was awarded visitation with the minor child. On June 20, 2011, Fischer filed a petition for permission to remove the minor child to the Virgin Islands. A hearing was held on Fischer's petition on August 8, 2011.

Fischer testified that she desired to relocate to the U.S. Virgin Islands because she "ultimately" wanted to advance her career there teaching American Sign Language. Although she admitted that she did not have an employment contract at the time of the hearing, she had made inquiries into employment opportunities in the Virgin Islands. In Fort Smith, she had completed her contracts in two private-tutoring arrangements and did not intend to renew them. She further stated that she would have the support of her father and stepmother, who both live there, as well as her six siblings who regularly visit the beachfront resort that her father owns in St. Croix. Fischer noted that she had no extended family in Arkansas and that although she currently resided in a nice home in Fort Smith, she regarded the $1260 per-month mortgage

as "too expensive." According to Fischer, she had already made living arrangements at her father's resort while she waited for an apartment. She had enrolled M.S. in a private school, The St. Croix Day School, which offered swimming lessons. She also introduced a printout from the website of the Pointe Dance Academy, a ballet school in ⌊3which she had enrolled M.S. Fischer also made part of the record numerous photographs that showed her desired residence to be a tropical paradise.

Fischer stated that she decided to relocate when Smith went into drug rehab. She claimed that Smith was not exercising his court-ordered visitation. Fischer acknowledged that immediately after Smith left drug rehab, she allowed Smith to stay at her residence "a few nights" because Smith's mother did not allow him to stay at her house alone. Fischer admitted that she allowed Smith to "hang out" with her and her daughter because she wanted them to work together as parents and she "missed the old Damon." Nonetheless, Fischer denied resuming an intimate relationship with Smith. Although she readily granted Smith access to M.S., she claimed that it was her practice to hire a babysitter if she could not be in the house when Smith visited.

According to Fischer, Smith was entitled to every-other-weekend visitation, but since Christmas he would call just before the visit was scheduled to start and postpone it until the following weekend. Likewise, he missed many of his court-awarded Wednesday-night visits. Smith ascribed this behavior to his drug problem, but Fischer asserted that it did not change after Smith had gone to rehab. Fischer asserted that Smith had neither a home of his own, nor a vehicle.

Fischer denied that her purpose for moving to the Virgin Islands was an act of retaliation. She admitted that she often

failed to respond to Smith's text messages during the month that she was in St. Croix. However, she described the communication as "harassing." When confronted with a text that she had sent, "You will now lay in the bed you made," she explained that she meant she would not remain in Fort Smith because Smith was not exercising his visitation. She noted that drugs had ended their marriage, that Smith had an outstanding warrant for hot checks, and that she did not want herself or her daughter to be saddled with Smith's behavior.

Fischer's father, Charles Fischer, testified that he owned homes in Oklahoma and Canada as well as in the Virgin Islands. He stated that he spent approximately nine and a half months each year in St. Croix and split the remainder of the time between his other two residences. Charles confirmed that Fischer's six siblings and their children visited the island twice a year. He also confirmed that Fischer had contacted the Virgin Islands Department of Education and that she had made living arrangements for her and M.S. Charles further testified that he was a licensed pilot and had aircraft available for his use. He expressed his willingness to provide transportation for M.S. to visit her father in Fort Smith.

Smith's mother, Sheen Klinger, testified that Smith was currently living in her home along with his twenty-seven-year-old brother, Dustin, who "probably" has a drug problem. She stated that she was married, but her husband was "taking a break" in a hotel. According to Klinger, her mother lives in Kansas and visits Fort Smith "three or four times per year." Smith also has a sister who lives in the area.

Klinger noted that Smith had several jobs prior to entering rehab. She stated that he had a personal automobile, but it was "broken down." Klinger claimed that she allowed Smith to stay at her house even when she was out of town.

She claimed that Smith's relationship with M.S. was "great." According to Klinger, Smith visited M.S. on Wednesday and every other weekend "as far as I know." She did not remember him missing a single visit prior to his checking into drug rehab. She also noted that Fischer would transport Smith to her residence so that he could visit M.S. Klinger testified that she personally drug-tested Smith while he was living with her, and "he never failed a drug test." She admitted that she supposedly drug-tested Smith just prior to his entering drug rehab. When questioned by the court, Klinger also admitted that she had not tested Smith "in a long time because I see him and he's good." Klinger stated that, if Fischer was allowed to relocate, she feared that M.S.'s relationship with the Smith side of the family would be compromised.

Smith testified that he opposed the relocation. He admitted to drug use before he checked himself into rehab. His drug of choice was Oxycodone. He claimed that Fischer was also a drug user and tried to induce him to use marijuana with her, but he had refused. He claimed that, after he got out of rehab, he spent every day at Fischer's house until she left for the Virgin Islands, spending the night four or five days a week. He claimed that their relationship had again become intimate and that was when Fischer had tried to get him to smoke K2 with her. Smith noted that Fischer was living in a nice four-bedroom house located in a nice neighborhood. M.S. was involved with gymnastics and swimming lessons in Fort Smith, and he saw no "benefit" in the move. He admitted that he had several employers since the divorce and also admitted falling

$1,035 behind on his child support,[1] but had borrowed money to pay the arrearage shortly before the court hearing. He confirmed that he was living at his mother's house, but, despite his mother's testimony to the contrary, claimed he did own an operable vehicle that he simply was not using at the present time. He admitted that his driver's license was suspended for driving while intoxicated but asserted that it had been reinstated. He denied current drug use and expressed confidence in passing a drug test.

According to Smith, he had difficulty reaching Fischer while she was in the Virgin Islands. Nonetheless, he claimed that he spoke with M.S. "every day or every couple of days." However, when questioned by the court, he stated that he spoke with M.S. "six or seven times" during the month that she was in the Virgin Islands. He denied Fischer's claim that there was a babysitter present when Fischer was not in the home.

Both Fischer and Smith were drug tested on the day of the hearing. Fischer was negative for all drugs. Smith tested positive for opiates; however, this fact was not mentioned in the trial court's order. A subsequent, privately-administered test showing no drugs in Smith's system was also made part of the record.

The trial court took the matter under advisement but ultimately ruled in favor of Smith. In denying Fischer's relocation petition, the trial court correctly noted that *Hollandsworth* provides that there is a "presumption in favor of relocation for custodial parents with primary custody," and that "the non-custodial parent has the burden to rebut the relocation presumption." It also noted that, in *Hollandsworth*, there are five factors to be considered in evaluating a relocation petition:

1) The reason for relocation; 2) Education, health and leisure opportunities in the location in which the custodial parent and child will relocate; 3) Visitation and communication for the non-custodial parent; 4) Effect of move on the extended family relationships in the location in which the custodial parent and children will relocate as well as in Arkansas; and 5) Preference of the child . . . :

The trial court found, however, that proof with regard to these factors rebutted the presumption. The court opined that the reason for relocation was "simply to leave Fort Smith." It noted that there was testimony that Smith only missed visitation "during the nine days he was in rehab." Further, it found that Fischer "has not secured employment in the United States Virgin Islands." The trial court further found that "Plaintiff admitted that the educational, health and leisure activities were no better in the United States Virgin Islands than those activities in which the minor child participated, here in Arkansas," and noted that the child lived in a "four bedroom home in Arkansas and would be living in an apartment in the United States Virgin Islands." The trial court further opined that visitation would likely not occur more than two times per year and that telephone communication would "not likely be much better based upon the age of the minor child." It found that Fischer's only family member residing in St. Croix was her father, and he was only present "nine months of the year." Conversely, Smith has extended family in Fort Smith and the court was "convinced" that Smith and his mother "enjoy a strong bond with the minor child." The court did not consider the preference of the minor child due to her age.

---

1. His support obligation was $62 per week.

■ On appeal, Fischer argues that the trial court was clearly erroneous in its application of *Hollandsworth* to the instant case. She asserts that *Hollandsworth* is clear that she was not obligated to prove an advantage when requesting to relocate. Accordingly, she argues that, without proof that there are distinct disadvantages to the relocation to rebut the presumption, the presumption is that relocation is in the best interest of the child and the trial court must allow relocation. Fischer asserts that the trial court improperly shifted the burden to her to prove that her proposed move offered some advantage. We agree.

The instant case is remarkably similar to our recent decision in *Hartsell v. Weatherford, supra.* In *Hartsell,* we noted that "[i]t is up to the parent opposing the move to prove that the relocation would not be in the best interest of the child." Further, we noted that the enumerated factors in *Hollandsworth* were merely five "matters" that a trial court should consider and that the supreme court emphasized that the custodial parent was not required to prove a real advantage to herself or himself and to the children in any of these factors. *Id.*

■ In our view, the trial court improperly required Fischer to prove that her proposed relocation to the Virgin Islands offered some material advantage. The trial court's misapplication of the law is particularly evident when it recited that Fischer's "motive for relocation was simply to leave Fort Smith,"·and that she had not proved that the educational, health, and leisure activities were better in the Virgin Islands. As noted above, a custodial parent's desire to leave his or her place of residence, without more, is not a legal barrier to relocation.

■ Likewise, the trial court erred when it found that the difficulty with visi-

tation and communication engendered by the move would be a barrier to relocation. *Hollandsworth* presupposes that visitation and communication between the child and the noncustodial parent will be impaired. However, if there continues to be meaningful visitation, the presumption in favor of relocation is not rebutted. *Benedix v. Romeo,* 94 Ark.App. 412, 232 S.W.3d 493 (2006); *see Stills v. Stills,* 2010 Ark. 132, 361 S.W.3d 823; *Mathews v. Schumacher,* 2010 Ark. App. 155, 375 S.W.3d 31. Here, Fischer proposed visitation at Christmas, during the summer, and at least two other periods of at least one week each year. Moreover, Charles Fischer, a licensed pilot, testified that he would be able to assist with transportation. Notwithstanding the trial court's conclusion that telephone communication would be difficult, Smith himself testified that he had regular cell-phone communication with his daughter while she was in the Virgin Islands.

■ The trial court also misinterpreted the significance of the fourth *Hollandsworth* factor—"the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas." As in *Hartsell,* there is bound to be some strain on the relationships with extended family in Arkansas. However, the prospect of improved relationships with Fischer's extended family will be greatly enhanced. We hold that the trial court erred in concluding that this situation rebutted the presumption in favor of relocation. Where extended family is concerned, an existing relationship with one side does not trump the prospect of enhancing a relationship with the other side. *Hartsell, supra.*

In conclusion, we hold that the trial court erred by shifting the burden of proof to the custodial parent. Accordingly, we

reverse and remand to the trial court for further proceedings. Having held that the trial court erred by improperly shifting the burden to Fischer to prove some advantage in her relocation with her minor child, we need not consider the balance of Fischer's argument concerning the validity of the trial court's factual findings.

Reversed and remanded.

GRUBER and GLOVER, JJ., agree.