N. MARK KLAPPENBACH, Judge
Appellant Christopher Raymond appeals the January 26, 2018 order of the Pulaski County Circuit Court that granted the motion of appellee Linda K. Kuhns (previously Raymond) to relocate to Louisville, Kentucky, with the parties' two sons, JR (born in 2008) and ZR (born in 2010). Appellant argues that the circuit court clearly erred and that it was not in the children's best interest to grant appellee's motion to relocate. We affirm.
In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. McNutt v. Yates , 2013 Ark. 427, at 8, 430 S.W.3d 91, 97. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. Boudreau v. Pierce , 2011 Ark. App. 457, at 11, 384 S.W.3d 664, 671. It is well settled that the primary consideration is the welfare and best interest of the child, while other considerations are merely secondary. McNutt , 2013 Ark. 427, at 8, 430 S.W.3d at 97. We give special deference to the superior position of the circuit court to evaluate and judge the credibility of the witnesses in child-custody cases, and this deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize *144 to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. Id.
In determining whether a parent may relocate with a minor child, a circuit court must generally look to the principles set forth in Hollandsworth v. Knyzewski , 353 Ark. 470, 109 S.W.3d 653 (2003), and Singletary v. Singletary , 2013 Ark. 506, 431 S.W.3d 234. In Hollandsworth , the supreme court announced a presumption in favor of relocation for custodial parents with sole or primary custody, with the noncustodial parent having the burden to rebut this presumption. Hollandsworth , 353 Ark. at 485, 109 S.W.3d at 663. In Singletary , the court explained that the Hollandsworth presumption does not apply when the parents share joint custody of a child. Singletary , 2013 Ark. 506, at 8, 431 S.W.3d at 239-40. The proper analysis for a change-in-custody request due to the relocation of one parent in a joint-custody situation is the same as that when relocation is not involved; the court must first determine whether a material change in circumstances has transpired since the last order on custody and then whether the change in custody is in the best interest of the child. See id. When the agreement states that the parties share "joint legal custody" but that one parent has "primary physical custody" subject to certain visitation privileges, and when the ratio of actual time with the children is basically a 60/40 split, then this falls within the joint-custody analysis of Singletary . See Cooper v. Kalkwarf , 2017 Ark. 331, 532 S.W.3d 58. The Hollandsworth presumption should be applied only when the parent seeking to relocate is not only labeled the "primary" custodian in the divorce decree but also spends significantly more time with the child than the other parent. Id. ; Tidwell v. Rosenbaum , 2018 Ark. App. 167, 545 S.W.3d 228.
In this case, the parties divorced in 2012 and agreed that they would "share joint legal custody" of the boys with Linda "having primary physical custody." In 2014, the parties filed competing motions concerning visitation and custody, but in 2015, they entered into an agreed order that continued the same custodial titles but reduced Chris's parenting time. In 2017, Linda filed a motion to relocate with the children to Louisville, Kentucky, so that she could accept a job with greater earning capacity as a pilot for UPS. Chris filed a response in opposition to Linda's motion asserting various reasons why it was not in the children's best interest to permit relocation, and he also filed a motion to change primary custody to him. Linda filed a response in opposition to changing custody to Chris.
The competing motions were heard before the circuit court in December 2017. The parties both testified and presented testimony from ZR's counselor, Sara Smith; ZR and JR's counselor, Scott Loye; and a UPS pilot, Kenneth Butry. After taking the matter under advisement, the circuit court issued a twelve-page extensively detailed order in January 2018 that denied Chris's motion to change custody and granted Linda's motion to relocate, reviewing her motion under the Singletary standards. Chris appeals, arguing that the trial court's decision to permit Linda to relocate with the boys was analyzed inappropriately under the Hollandsworth standards and that the trial court's decision is not in the children's best interest. Chris does not contest that there was a material change in circumstances in this case.
Chris argues that the circuit court did not adhere to the requirement to view the evidence from a neutral point of view in determining the children's best interest as required by Singletary but instead placed *145 an additional burden on him to rebut the presumption established by Hollandsworth that would be in favor of Linda relocating with the boys. Chris contends that Linda never presented any evidence or testimony that her move to Kentucky would be in the children's best interest; instead, he presented evidence to show that the boys needed to stay in the Little Rock area where they were thriving and where they had lived their whole lives. Chris argues that the evidence, when viewed from a neutral perspective, could lead to only one conclusion, which would be to deny Linda's petition. As we will explain, Chris has failed to demonstrate that the circuit court clearly erred, and we affirm the circuit court's order.
The circuit court acknowledged that this was "an exceedingly difficult decision" considering that these were two very involved and loving parents, both of whom had remarried and brought involved and loving stepparents into the children's lives. The circuit court specifically set out its understanding of the law on relocation and explained that "the presumption in favor of relocation does not apply." The circuit court recognized that this case required a best-interest determination in considering the parties' competing motions.
The circuit court recounted the testimony and evidence, most of which is not in dispute and is summarized as follows. Chris and Linda are lieutenant colonels in the Arkansas Air National Guard and both work at the air force base.[1] Chris is a squadron commander of his unit, and Linda is a pilot-technician who trains pilots in this unit. Chris is not technically in Linda's chain of command, but Linda explained instances that gave her concern that she received unfavorable treatment due to Chris having indirect authority over her, which the trial court believed.
Chris and Linda had remarried to people who were good stepparents and positive influences in the children's lives. Linda's salary with the Guard was $106,655, and she had six days off per month. Linda had been offered a position with UPS that would initially require training at a lower salary, but after a year she would earn $175,000. She said that she had not accepted UPS's first job offer in July 2017 because of the situation with Chris and her children, but UPS was holding the job open for her. Linda said that her job with UPS would not require her to wear the equipment required by the Guard. This equipment had caused her neck and shoulder pain and required her to undergo physical therapy. Linda understood that after her training period, her flight schedule might require that she be gone overnight up to fourteen days at a time, but she would also have at least fourteen days off per month. She believed she had been guaranteed that her hub would be in Louisville, Kentucky, the one closest to Arkansas.
The boys attended Episcopal Collegiate School in Little Rock. Linda had already found a comparable private school, Louisville Collegiate, where they could attend in the fall of 2018; JR had been accepted for enrollment, and ZR (who is high functioning on the autism spectrum) was conditionally accepted. Linda explained that if she were permitted to relocate with the boys to Louisville, her husband's parents would live with them to help her care for the boys while she was in training or while she was working. Her husband was going to stay in Arkansas until January 2019 when he could retire from the military and then would join them in Louisville. Linda explained *146 her willingness to expand Chris's visitation and her willingness to fly the boys to Arkansas for visitation.
Chris lived in Sherwood with his wife and two small children. He explained that he had a job contract with the Guard through 2022; that he has very flexible hours to take care of his children; and that he was not subject to deployment. Chris calculated that he had had the boys 39 percent of the time.[2] Chris said that he and Linda had appointments with the children's counselor, Scott Loye, whom he wanted the boys to continue to see, and that the counselor was a "buddy" to the boys. Chris acknowledged that ZR has autism and said that he provided ZR with therapies. Chris did not want the boys to move and could not understand why Linda would leave her current job given that she also had great flexibility in her job. Chris noted that Linda had no family in Louisville and that Linda's father-in-law is blind, which limited his ability to help with the boys. He said that the boys were not used to Linda being gone and that her new job would be rigorous. Chris believed that the boys were thriving at their current school and wanted them to be able to continue all their current activities.
Sara Smith, ZR's counselor, testified that she would not have concerns about ZR moving because he would adjust and had the skills to do so. She stated that ZR would have to change teachers each year no matter where he attended school. She stated that Chris was initially in disagreement that ZR had autism and that Linda had been and would continue to be compliant with ZR's therapy needs.
Scott Loye, who had counseled both boys, testified that both boys had diagnoses: ZR has autism, and JR has adjustment and attachment disorders. He recommended that a multitude of steps should be taken before moving the boys to Louisville, that the boys preferred not to move, and that it would be detrimental to the boys to move them at present.
The circuit court found that it was not in the children's best interest to change custody to Chris. The circuit court stated, "No relocation case is anything but difficult." The circuit court then found:
When the court weighs the testimony of the parties and their witnesses, the court is convinced the testimony weighs in favor of [Linda] and her retaining primary physical custody of the children. The parties will continue to have joint legal custody with some modifications due to [Linda's] move. [Linda's] Motion to Relocate is granted with some conditions and modifications.
The circuit court set out the reasons for its decision, including that the move would permit Linda to acquire "a profound increase in income" that would have a beneficial impact on the children; that Linda's move was for a job opportunity and not motivated by a desire to deny Chris contact with the boys; that the educational and lifestyle opportunities in Louisville were "equal to, or greater than" those available in Little Rock; that the ability of the parties to transport the boys made continuing contact viable; that Scott Loye was in favor of the boys staying in Arkansas but that he was also viewed by Chris as the children's "buddy"; that Scott Loye's testimony was more like that of a close family friend; that Sara Smith did not have any concerns with ZR relocating; that Linda's current job was "untenable" with Chris having indirect authority over her; that neither party's families (except some of Chris's wife's family) lived in Arkansas; that Chris agreed to reduce his *147 parenting time with the boys in the 2015 agreed order; that the circuit court had no concern that Linda would not abide its orders; that Linda would ensure the boys were enrolled in a private school of equal or greater quality than Episcopal Collegiate; that Linda would ensure the boys received "appropriate professional counseling and therapeutic services" in Louisville; that Linda had taken adequate steps to ensure that the boys had proper supervision during any work-related absence she might have during training; and that Linda's husband would be joining her in January 2019.
The circuit court required that Linda continue the children's therapy with Scott Loye pending relocation to make the move as easy on the boys as possible; that the boys continue to live in Arkansas until one week before the fall term of school; that Linda ensure the boys become more familiar with Louisville and their new school with visits before the fall term; that Chris additionally have the boys for spring break 2018, the majority of summer 2018, Thanksgiving break 2018, and Christmas break 2018, with periodic visits for Linda, all of which would be conducted in Arkansas; that Linda provide the transportation for the aforementioned Thanksgiving and Christmas breaks; that Chris have the boys for future fall breaks, Thanksgiving week, Christmas breaks, and spring breaks, and for any weekend visitation in Louisville if Linda was given twenty-one days of notice. The circuit court also required that, after Linda's UPS probationary period was completed, Linda would be responsible for flying the boys commercially or privately to Little Rock a minimum of six times per year for at least a weekend visit. The circuit court encouraged the parties to cooperate and set visitation to maximize the time Chris would have with his sons. In April 2018, the parties submitted a subsequent agreed supplemental order to establish precise dates and times of visitation periods and methods of exchange, which was approved by the circuit court.
On this record, we are not left with a distinct and firm impression that the circuit court made a mistake. The factors a trial court may consider in determining what is in the best interest of the children include the psychological relationship between the parents and the children, the need for stability and continuity in the relationship between the parents and the children, the past conduct of the parents toward the children, and the reasonable preference of the children. See Bamburg v. Bamburg , 2014 Ark. App. 269, 435 S.W.3d 6. As we understand Chris's argument, he appears to assert that the Hollandsworth presumption requires the circuit court to consider certain factors bearing on the children's best interest as it relates to the motion to relocate, but this means that those best-interest factors cannot and do not apply in the joint-custody or change-of-custody context controlled by Singletary . We disagree. The Hollandsworth best-interest factors[3] can be relevant considerations; it is only the presumption in favor of relocation that is not to be applied. Killingsworth v. Dittmar , 2018 Ark. App. 294, 552 S.W.3d 1.
*148 At its core, Chris's argument is that we should reweigh the evidence in a manner that is more favorable to him, but credibility determinations are left to the circuit court and we will not reweigh the evidence. See Colston v. Williams , 2018 Ark. App. 455, 556 S.W.3d 548 ; Glisson v. Glisson , 2018 Ark. App. 21, 538 S.W.3d 864. Given our standard of review and the special deference we give trial courts to evaluate the witnesses, their testimony, and the children's best interest, we cannot say that the trial court clearly erred in reaching its decision on the best interest of these children. Killingsworth v. Dittmar, supra.
Affirmed.
Harrison and Glover, JJ., agree.

Linda testified that she would be eligible to "officially separate" from the Guard in July 2018, and her husband was expected to retire in January 2019.

Linda calculated that Chris had had the boys 36 percent of the time.

The circuit court should consider the following factors in making a best-interest-of-the-child determination: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the new location; (3) the visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the new location as well as in Arkansas; and (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference. See, e.g. , Stills v. Stills , 2010 Ark. 132, 361 S.W.3d 823.