Cite as 2019 Ark. App. 549

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-19-406

|  |  |
|---|---|
| CODY WADLEY | **Opinion Delivered** November 20, 2019 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. 60DR-17-366] |
| V. | HONORABLE VANN SMITH, JUDGE |
| KATIE WADLEY | |
| APPELLEE | AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

## LARRY D. VAUGHT, Judge

The divorce decree entered by the Pulaski County Circuit Court awarded Cody Wadley and Katie Wadley joint legal custody of their child AW (born October 17, 2016). The decree further gave Katie primary physical custody and gave Cody visitation, with the parties spending approximately equal time with AW, and ordered Cody to pay child support. Five months after the decree was entered, Katie moved to reduce Cody's visitation and to request that Cody be ordered to pay back child support. On March 28, 2019, the circuit court entered an order maintaining the parties' joint legal custody of AW with Katie serving as primary physical custodian, but the court reduced Cody's visitation to every other weekend and one weeknight a week. The court also found Cody in contempt for failing to pay child support. Cody appeals the order, arguing that there was no material change of circumstances warranting the

modification in visitation, the modification is not in AW's best interest, and the court erred in finding him in contempt. We affirm in part and reverse and dismiss in part.

In reviewing domestic-relations cases, appellate courts consider the evidence de novo. *Baber v. Baber*, 2011 Ark. 40, at 9, 378 S.W.3d 699, 705. We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.*, 378 S.W.3d at 705. Whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, and we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.*, 378 S.W.3d at 705.

A circuit court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or facts not known to it at the time of the initial order. *Id.*, 378 S.W.3d at 705. Although visitation is always modifiable, to promote stability and continuity for the children and to discourage repeated litigation of the same issues, courts require more rigid standards for modification than for initial determinations. *Id.*, 378 S.W.3d at 705. Thus, the party seeking a change in visitation has the burden to demonstrate a material change in circumstances that warrants such a change. *Id.*, 378 S.W.3d at 705. The primary consideration regarding visitation is the best interest of the child. *Id.*, 378 S.W.3d at 705. Fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.* at 10, 378 S.W.3d at 705.

Cody's first point on appeal is that the circuit court clearly erred in finding a material change in circumstances to support the order reducing his visitation. The circuit court first found that

> the parties, who at the time of the divorce were able to agree on seemingly everything (the divorce was uncontested and the parties agreed on property distribution, debt

2

allocation, custody-and-visitation schedule, and child support), are no longer able to communicate effectively, causing their ability to coparent to bog down.

The court then found that since the decree had been entered, the following circumstances had changed: (1) the parties had been unable to get along; (2) both parties had moved; (3) Cody had at least two girlfriends either live with him or stay the night a considerable amount of time, and he was allowing these women to step into a "quasi-step-parenting role rather quickly and without discussion with Katie"; (4) Cody allowed his ex-girlfriend, Whitney Sims, to watch AW "the majority of the time" during his visitation; (5) Cody allowed his new girlfriend, Allison Lester, whom he had not been dating long, to pick up AW at exchanges; (6) Cody was smoking marijuana while AW was in his care, and while Cody claimed he had stopped smoking marijuana in December 2018, he tested positive for marijuana the day of the hearing, which was forty-five days later, and there was evidence that the specimen had been diluted; (7) Cody had changed jobs; and (8) Cody had been diagnosed with cancer and is undergoing treatment. The court found that while these circumstances considered alone may seem "minor," "the culmination of the changes is significant and is sufficient to convince the Court that there has been a material change in circumstances affecting the child's best interest sufficient to warrant a modification in [Cody's] visitation." We cannot say that the circuit court clearly erred in finding a material change in circumstances.

At the hearing, Katie stated that since the divorce, she and Cody no longer communicate well and that they do not get along. She testified about disputes that arose (1) over a custody exchange during the Thanksgiving holiday; (2) when Katie confronted Cody about his marijuana use and voiced her opposition to it; he admitted his marijuana use but told her he would not give it up and that they would "settle it in court"; (3) when Katie asked Cody

3

if she could keep AW while Cody was in the hospital for cancer treatment, he refused; (4) when Katie asked Cody who was keeping AW when Cody was not caring for him, Cody refused to tell her; and (5) when Katie asked Cody about Allison and how much time she was spending with AW, Cody refused to answer.

Significantly, Cody admitted that he and Katie "have a lot of communication faults between" them. He testified about another dispute that arose between the parties—which was cited in the circuit court's order—over whether to apply the day-care or school-district schedule for the custody exchange during the Christmas holiday. This dispute required the involvement of the parties' attorneys. While the circuit court cited only one example of the parties' inability to get along in its order, under our de novo review we consider all the examples.

Katie also testified that Cody has had "numerous" girlfriends since the divorce decree was entered and that he had been letting his girlfriends take care of AW. Whitney corroborated Katie's testimony. Whitney stated that she took care of AW 90 to 95 percent of the time Cody had custody of AW. Whitney testified that Cody "would pick [AW] up from daycare or pick him up from Katie and just give him to me. And then he would go to the gym or go hang out with friends or disappear. So I had [AW] alone most of the time."

Katie stated that Cody lists the women he dates as people authorized to pick up AW from day care. Katie stated that Cody had been dating Allison only a month or a month and a half when he placed her name on the day care pickup list.[1] This evidence was not disputed by

---

[1]We note that the circuit court's finding that Cody sent Allison to pick up AW at exchanges is not supported by the evidence in this case. It appears that the circuit court confused the testimony about the daycare pick-up with the testimony about custody exchanges.

4

Cody, and it was not disputed by Allison, who attended the hearing but did not testify. Katie said Allison is nineteen years old, barely knew AW or Cody at that time, and should not have been allowed to pick up AW from daycare.

Katie testified that after the divorce, Cody had overnight romantic guests while AW was in his care, which is prohibited in the divorce decree.[2] Cody testified that he had not had any overnight romantic guests after the divorce decree was entered. However, Katie's testimony was supported by Whitney, who testified that after Cody's divorce, she and Cody spent the night together when Cody had custody of AW. She said, "He stayed at my house and I stayed at his house as well." Whitney further stated that Cody would lie to Katie when Whitney was staying the night and "act like [Whitney] wasn't there."

Arkansas appellate courts have held that extramarital cohabitation in the presence of children "has never been condoned in Arkansas, is contrary to the public policy of promoting a stable environment for children, and may of itself constitute a material change of circumstances warranting a change of custody." *Alphin v. Alphin*, 364 Ark. 332, 341, 219 S.W.3d 160, 165–66 (2005) (citing *Word v. Remick*, 75 Ark. App. 390, 396, 58 S.W.3d 422, 427 (2001); *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999); *Taylor v. Taylor*, 353 Ark. 69, 80, 110 S.W.3d 731, 737 (2003) (noting that the supreme court has held that "a parent's unmarried cohabitation with a romantic partner, or a parent's promiscuous conduct or

---

[2]The decree states, "Neither party shall allow overnight romantic guests during their custodial time with the child." The purpose of the overnight-guest order is to promote a stable environment for the children and is not imposed merely to monitor a parent's sexual conduct. *Taylor v. Taylor*, 345 Ark. 300, 304, 47 S.W.3d 222, 225 (2001) (citing *Campbell v. Campbell*, 336 Ark. 379, 389, 985 S.W.2d 724, 730 (1999)).

lifestyle, in the presence of a child cannot be abided"); *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001)).

Finally, Katie testified that Cody smokes marijuana while AW is in Cody's care. Whitney confirmed this when she testified that Cody smoked marijuana on a regular basis while AW was in the home. Cody admitted smoking marijuana. In direct response to questioning by the circuit court, Cody said that he had not smoked marijuana since December 2018 or the beginning of 2019 and would "most likely be clean," he had "never failed a drug test," and if he was tested that day, "[he] should be fine." However, Cody tested positive for THC the day of the hearing—more than forty-five days after he allegedly last smoked marijuana—and there was evidence that the specimen Cody provided had been diluted. *See Stone v. Steed*, 54 Ark. App. 11, 15–16, 923 S.W.2d 282, 284–85 (1996) (affirming material-change-of-circumstances finding where there was evidence of drug use by the appellant and individuals in her home while appellant had custody of her child).

In this case, the circuit court did not believe Cody when he testified that he had quit smoking marijuana or that he had no overnight guests after the divorce decree was entered. The court also rejected Cody's primary argument asserted at trial and on appeal that Katie's only motive for filing to modify his visitation was to retaliate against him for dating Allison. Instead, the court believed Katie and Whitney when they testified that Cody was routinely using drugs during AW's visitation and that Cody regularly had at least one overnight guest in violation of the divorce decree. The court believed Katie when she testified that she and Cody do not communicate well or get along and that Cody had placed his new girlfriend's name on the day care pickup list.

Cody acknowledges in his appellate brief that "Whitney's testimony was clearly important to the [circuit] court," yet he asks this court to reweigh her testimony in his favor. He also argues that the circuit court mischaracterized his testimony about his marijuana use, claiming that he admitted he might have residual marijuana in his system. He asserts that he should not be faulted for the parties' inability to communicate about the Christmas holiday-exchange language in the decree because the court admitted the language in the decree was "unclear." He argues that Katie's complaints against him are "petty." All these arguments ask us to reweigh the evidence and make credibility findings in Cody's favor. This we cannot do. *Raymond v. Kuhns*, 2018 Ark. App. 567, at 10, 566 S.W.3d 142, 148.

We will not substitute our judgment for that of the circuit court, which observed the witnesses first-hand. *Riddick v. Harris*, 2016 Ark. App. 426, at 5, 501 S.W.3d 859, 865. There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry a greater weight than those involving the custody of minor children, and our deference to the circuit court in matters of credibility is correspondingly greater in such cases. *Id.*, 501 S.W.3d at 865. Having considered the evidence, the circuit court's credibility findings, the weight given to the evidence by the court, and our de novo review, we affirm the circuit court's finding that a material change of circumstances supported the modification of visitation.

Cody's second point on appeal is that the circuit court clearly erred in finding that the modification of visitation was in AW's best interest. He points to Katie's testimony that she had no evidence that Cody had done a poor job raising AW in terms of discipline, food, clothing, and cleanliness. And while Katie testified that she had observed AW's biting, hitting, and throwing tantrums after visiting Cody, he points out that she also testified that she did not

have any evidence to support that claim and that Cody's father and his father's fiancée testified that they had not observed that behavior from AW.

Again, Cody's best-interest argument asks us to reweigh the evidence in his favor, which we cannot do. *Raymond*, 2018 Ark. App. 567, at 10, 566 S.W.3d at 148. The circuit court believed Katie and Whitney and found that the modification of visitation was in AW's best interest due to Cody's drug use while AW was in his custody, his having at least two girlfriends in a five-month period after the divorce, his having at least one of them stay overnight in violation of the decree, his leaving AW in the care of a girlfriend 90 to 95 percent of the time he had custody, and his authorizing new girlfriends to pick up AW from day care. A custodial parent's use of drugs is a proper factor for the court to consider when determining the best interest of the child. *Rector v. Rector*, 58 Ark. App. 132, 138, 947 S.W.2d 389, 392 (1997). Extramarital cohabitation in the presence of the children is a significant factor in determining where the best interest of the children requires them to be placed. *Word*, 75 Ark. App. at 396–97, 58 S.W.3d at 427.

While Cody offered denials and explanations for his behavior, the court did not believe him. Further, the evidence is undisputed that Katie does not use drugs or have overnight guests and that she has a home, a job, and family nearby. Accordingly, we hold that the circuit court did not clearly err in finding that modification of Cody's visitation was in AW's best interest.

For his third and final point, Cody argues that the circuit court clearly erred in finding him in contempt for nonpayment of child support.[3] He claims the finding is clearly erroneous

---

[3]On appeal, Cody does not challenge the circuit court's $1,924 judgment against him for back child support or the $98-a-week child-support award.

because Katie never filed a motion for contempt on the back child-support issue and because he was not on notice that he would be defending against such contempt. We will not reverse a circuit court's finding of civil contempt unless that finding is clearly against the preponderance of the evidence. *Balcom v. Crain*, 2016 Ark. App. 313, at 4, 496 S.W.3d 405, 408.

Arkansas Code Annotated section 16-10-108(c) (Repl. 2010) provides that "[c]ontempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his or her defense." Cody's alleged contempt is not the type that can be punished summarily; therefore, he was entitled to notice of the contempt accusation and a reasonable time to defend it. He did not receive such notice because Katie did not file a motion for contempt on the issue of the child-support arrearages. In fact, at the beginning of the hearing, Katie's attorney stated to the court that Katie did not wish to request contempt for Cody's failure to pay child support. Therefore, we hold that the circuit court clearly erred in finding Cody in contempt, and we reverse and dismiss the contempt finding.

Affirmed in part; reversed and dismissed in part.

GRUBER, C.J., and HARRISON and MURPHY, JJ., agree.

VIRDEN and SWITZER, JJ., dissent.

**MEREDITH B. SWITZER, Judge, dissenting**.  I agree with the majority that the circuit court erred in holding Cody in contempt for failure to pay child support. However, I would reverse the circuit court's decision regarding custody/visitation because many of the findings of fact the circuit court cites as establishing a material change in circumstances are clearly erroneous.

9

As an initial matter, while the circuit court states in its order that Katie and Cody would continue to share joint legal custody of AW, the circuit court's order effectively gives Katie primary physical custody of AW. Joint custody, which is favored in Arkansas, is defined by statute as "the approximate and reasonable equal division of time with the child by both parents individually as agreed by the parents or as ordered by the court." Ark. Code Ann. § 9-13-101(a)(5) (Repl. 2015). While Katie and Cody agreed in their divorce decree to joint custody, the circuit court's March 2019 order significantly reduced Cody's time with AW from an approximately equal division of time to every other weekend, one additional night per week, two weeks in the summer, and specified holiday visitation. To call this arrangement "joint custody" is a legal fiction. To be certain, both parties characterize the decision as a change in custody instead of simply a modification in visitation. Although the standard of review is the same for both a change in custody and modification in visitation, the drastic result is not supported by the evidence in this case, especially as it relates to the best-interest-of-the-child analysis.

Remember, also, that Katie bears the burden of proving a material change of circumstances in this case because she is the party seeking to modify the agreed custody order. *Ellington v. Ellington*, 2019 Ark. App. 395, 587 S.W.3d 237. The standard for modifying custody is higher than it is for an initial determination of custody in order to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.*

Contrary to the majority's assertion, I do not challenge the credibility the circuit court afforded the witnesses. I respect the deference given to the circuit court in these

10

matters. I am left, however, with a firm conviction that a mistake was made and would reverse because the circuit court made specific findings of fact of a material change in circumstances, several of which are not supported by the evidence.

## I. *Changed Circumstances*

(1) The circuit court found that the parties were "no longer able to communicate effectively, causing their ability to coparent to bog down." Although the majority cites several instances where Katie alleged she and Cody did not communicate well, the circuit court cited only one instance of the parties' inability to communicate effectively—that is, their disagreement over the Christmas-visitation schedule. The circuit court specifically noted that the Christmas-visitation provision was "admittedly unclear." If the provision is admittedly unclear, and the parties relied on the advice of their respective attorneys — each of whom gave different interpretations of the provision — it does not follow that this one disagreement equates to an inability to communicate and coparent effectively. "Petty complaints and parental gamesmanship may not rise to the level of a material change in circumstances, especially if the child is left relatively unscathed." *Geren Williams v. Geren*, 2015 Ark. App. 197, at 13, 458 S.W.3d 759, 767 (citing *Hart v. Hart*, 2013 Ark. App. 714). The circuit court did not cite any other instances evidencing an inability to effectively communicate, and there was no evidence that AW was affected by this one visitation disagreement or any of the instances proffered by Katie.

(2) The circuit court also found that "since the parties' divorce, Cody has had at least two different girlfriends either live with him or stay overnight a considerable amount of time" and appeared to move his girlfriends into a "quasi-step-parenting role" rather quickly.

11

There is no evidence in the record that any girlfriend lived with Cody during this time. The evidence showed that one girlfriend, Whitney Sims, spent the night with Cody while AW was present. Even if Sims was correctly classified as filling a "quasi-step-parenting" role, there was simply no evidence of any other girlfriend filling that role. Katie alleged that Allison Lester was fulfilling that role, but she—as the person who bore the burden of proving a material change in circumstances—presented no evidence to that effect.

(3) Likewise, the circuit court found there was "undisputed testimony" that Cody started sending his new girlfriend alone to pick up AW at exchanges. There is no evidence to support this finding. Although Katie did allege that Lester was on the daycare pick-up list as an approved person, this self-serving allegation was not supported by any independent evidence, such as a daycare worker or a pick-up log. In fact, Katie testified that she did not know Lester and did not know whether Lester had ever picked up AW from daycare. The majority states that Lester was at the hearing and that Cody should have called her to refute this allegation. Does this not shift the burden to Cody to disprove a material change in circumstances? Katie subpoenaed Lester. Katie did not call Lester to support her claim, yet she has the burden of proof. Regardless, Katie's singular allegation that Lester was on the daycare pick-up list is not evidence that Cody sent his girlfriend alone to pick up AW at exchanges. Today, the majority has allowed unsubstantiated allegations to take the place of proof in changing custody. Katie, as the moving party, had the burden of proof, and her mere allegations, without proof, do not equate to a material change in circumstances sufficient to deprive Cody of joint custody and equal time with AW. Katie even admitted in her testimony that she had accused Cody of sexually abusing AW without any evidence

12

to support that allegation. Although Katie admitted there was no proof to support this particular allegation, the fact that she so freely wielded this claim underscores the danger of allowing unsubstantiated accusations to take the place of actual proof.

(4) The circuit court found that "Cody felt confident he would test negative for marijuana," and the results of the drug test he took on the day of the hearing contradicted his testimony on that point. This finding is contrary to the evidence. Cody never said he was confident he would test negative; in fact, he said that he might still have some residual marijuana in his system, even though he had stopped smoking marijuana two months prior. Essentially, the circuit court found that Cody lied about his use of marijuana. Cody was candid with the circuit court and even admitted that he might have residual amounts of marijuana in his system from his prior use. This is not a situation where the court afforded little or no weight to Cody's testimony. The court made a finding that was in direct contradiction to the evidence. Yet this appears to matter not to the majority.

The circuit court expressly states in its order that each instance, when taken alone, seems minor, but the culmination of the changes is sufficient to constitute a material change in circumstances. If several of the independent instances, which the court concedes are minor, are in fact erroneous and not supported by the evidence, they cannot logically form the basis of a culminating material change in circumstances. The circuit court's finding of a material change of circumstance is based in large part on factual errors. I am therefore left with a firm belief that the court's finding was clearly erroneous. Because many of the circuit court's findings are clearly erroneous, I cannot, as the majority does, give them deference as

13

I would regarding weight afforded to witness testimony and credibility. To hold otherwise would render appellate review of these types of determinations meaningless.

## II. *Best Interest*

Even assuming there was a material change in circumstances—a fact I do not concede—Katie did not prove that it was in AW's best interest to change custody or drastically reduce Cody's visitation. The court must consider both. Cody did test positive for marijuana, which he claimed was residual, and he did admit to having Sims as an overnight romantic guest. However, there was no evidence that in the short time between the joint-custody agreement and the circuit court's change of that custody— approximately five months total—these two issues had any negative impact on AW. To the contrary, Katie conceded there was no evidence she could present to show that Cody neglected taking care of AW or failed to take care of AW's needs, even though Cody had been diagnosed with cancer in October 2018 and was undergoing treatment. Considering there was no proof that changing custody was in AW's best interest, there were far less drastic measures the court could have employed to ensure Cody's compliance with the agreed order. For example, even where a custodial parent willfully violates court orders, a court's contempt power should be used prior to the more drastic measure of changing custody. *Geren Williams*, *supra*. Less than five months after the parties agreed to joint custody, immediately after Katie learned Cody was dating Lester, she moved to reduce Cody's visitation and modify custody. There was no attempt to use contempt powers to force Cody's compliance with the divorce decree regarding the prohibition of romantic overnight guests while AW was in his custody. There was no attempt to clarify the parties' visitation schedule to

14

alleviate confusion. Moreover, the only proof of overnight romantic guests came from Sims, whose relationship with Cody admittedly ended in June 2018. So while Cody may have demonstrated poor decision making in the past, the only proof presented was that the issue had been remedied well before the hearing. *Ellington*, *supra*. In no instance did Katie offer proof that AW was in any way negatively affected. I cannot see how drastically reducing Cody's physical custody from sharing equal time with Katie to standard visitation less than a year after the parties agreed to joint custody, without any proof of a negative impact on AW, is in AW's best interest. I believe the circuit court was clearly erroneous in making such a change, and therefore dissent.

VIRDEN, J., joins this dissent.

*Mann & Kemp, PLLC*, by: *Harrison Kemp*, for appellant.

*Brown Law Firm, Rebecca Brown, P.A.*, by: *Rebecca Brown*, for appellee.