Cite as 2021 Ark. App. 211

# ARKANSAS COURT OF APPEALS

DIVISIONS III AND IV
No. CV-20-368

| | | |
|---|---|---|
| EMILY ARMSTRONG | | **Opinion Delivered** May 5, 2021 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTEENTH DIVISION |
| V. | | [NO. 60DR-16-2368] |
| MARTEL DRAPER | | |
| | APPELLEE | HONORABLE RICHARD MOORE, JUDGE |
| | | AFFIRMED |

### N. MARK KLAPPENBACH, Judge

Appellant Emily Armstrong and appellee Martel Draper share one child, AAD, born in 2016.[1]  Armstrong appeals from an order of the Pulaski County Circuit Court prohibiting her from relocating to Colorado with AAD.  On appeal, she argues that the circuit court improperly shifted the burden to her and erroneously found that relocation was not in AAD's best interest.  We affirm.

Pursuant to an order entered in April 2017, the parties were awarded joint legal custody of AAD with Armstrong being the primary custodian.  Once AAD turned one year old, Draper was awarded visitation that amounted to two days a week and other times by agreement of the parties.  In June 2017, Draper filed a petition seeking to prohibit

---

[1]Armstrong's brief refers to the child as AEA; however, both parties testified that the child's last name was hyphenated AA-D pursuant to a prior court order, and we referred to him as AAD in our prior opinion cited below.

Armstrong from relocating to Colorado Springs with AAD. A hearing was held in December 2017 after which the court entered an order prohibiting Armstrong's relocation. Armstrong appealed the order to this court and argued that the circuit court had erroneously analyzed the case as a joint-custody arrangement pursuant to the requirements set out in *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234. We agreed that the parties did not share joint custody and that the case should instead be analyzed pursuant to *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), which sets forth a presumption in favor of relocation for custodial parents with primary custody. Accordingly, we reversed and remanded for the circuit court to apply the *Hollandsworth* presumption. *Armstrong v. Draper*, 2019 Ark. App. 114, 571 S.W.3d 60.

On remand, the court based its ruling on the record from the December 2017 hearing and letter briefs filed by the parties. The court found that Draper had rebutted the presumption in favor of relocation and that the relocation was not in AAD's best interest. Accordingly, the court again entered an order prohibiting Armstrong from relocating with AAD. Armstrong now appeals from this order.

The following relevant testimony was given at the December 2017 hearing. Armstrong testified that when she became pregnant with AAD, her mother moved from Colorado to live with her in Little Rock to help her during and after the pregnancy. Her mother now wanted to move back to Colorado Springs, and Armstrong wanted to move with her. She said that it was a fourteen-hour drive from Little Rock. Armstrong said that her mother had provided care for AAD, who was sixteen months old at the time of the

2

hearing, while both Armstrong and Draper worked. Armstrong did not know if her mother would move in the event the court prohibited Armstrong from relocating with AAD.

In addition to the support of her mother, Armstrong said she would also have the support of an aunt, an uncle, and cousins who live in Colorado Springs, although they had not yet met AAD. Armstrong had full-time employment lined up in Colorado as a makeup artist with MAC Cosmetics starting in March 2018. She had recently started working part time for MAC Cosmetics in Little Rock and also worked part time at a restaurant. She was currently making sixteen dollars an hour with MAC and believed she would earn the same or more in Colorado. She agreed on cross-examination that the job she was planning to take in Colorado was essentially a job that was available to her in Arkansas. Armstrong had not yet made living arrangements or daycare arrangements, although she said that her family could at least initially provide childcare. She said that she had explored educational opportunities for AAD in Colorado, and there were "great" opportunities.

Armstrong said that she is not able to rely on Draper for financial assistance because he misses child-support payments and had not made a payment in the preceding four months. At the beginning of the hearing, the parties stipulated that there was a total arrearage of $2427.87. Armstrong said that she is the parent who primarily took AAD to doctor's appointments, and she planned his meals and activities for his time in Draper's care. She said there had been times when Draper had not exercised his full visitation, such as when he returned AAD to her care early because AAD was sick. Draper also requested that Armstrong pick up AAD early one night when he was having a hard time with him at bedtime. Armstrong said that AAD had been returned to her care smelling of smoke and

3

with diaper rash that she believed was caused by leaving him in a dirty diaper for too long. She said that she had addressed these issues with Draper, but they still occurred and caused her concern about Draper's having extended periods of visitation. She said that Draper has spent time with AAD on nonvisitation days and that when AAD is in her care, Draper consistently checks in on him to make sure he is okay.

Regarding Draper's visitation if she is allowed to relocate to Colorado, Armstrong testified that she could commit to flying back to Arkansas with AAD once a year for two weeks and that Draper could fly to Colorado once a year for however long he would like. She said that they could agree to additional visitation and split the travel costs if child support was up to date. Armstrong felt that AAD was too young to have visitation over the whole summer and preferred the length of Draper's visitation to increase as AAD gets older. Armstrong said that she may fly back to Arkansas more than once a year, noting that she has family in Arkansas, but she could commit to only once a year at this time.

Draper testified that he objected to Armstrong's proposed relocation because Colorado Springs is too far away, and it is in AAD's best interest for his father to help raise him. Draper said that it is important for him to have a meaningful relationship with AAD, which the current visitation schedule allowed for, and that his visitation upon relocation would be significantly less. Draper said that Armstrong has not allowed him to have additional visitation beyond his forty-eight-hour period each week. He said that he has requested multiple times to pick up AAD for the day while Armstrong is working, but she has never allowed it. The reason Armstrong gave him for denying the request on one occasion was that her mother likes spending time with AAD. Draper said that Armstrong

4

would tell him that he could come by her home and visit AAD, but he claimed that she does not communicate this offer until late in the day and it does not work out. Draper said that his parents, siblings, and other family members live in Arkansas, and AAD knows them all. He said that AAD is happy to see members of his family, who are often around during Draper's visitations, and that relocation would negatively affect those relationships.

Draper testified that he had been laid off in March 2017 and was not currently employed, but he anticipated starting a position soon. He said that he had been living off credit cards and had received help from his family. Draper said that he had provided AAD with everything he needs at his home and had managed to pay his child support for February through August 2017, although some payments were late. He was now asking the court to reduce his child-support obligation due to his unemployment.

Laquita Freeman, Draper's sister, testified that their family has a close relationship with AAD. She said that she tries to see AAD every time Draper has him for visitation. She denied that this is because Draper cannot care for him on his own; instead, she said that because they cannot drop by and see AAD whenever they want, Draper's visitation days are very valuable to the family. Freeman said that a relocation to Colorado would have an adverse effect on the family's relationships because it is too far for the family to drive to see him frequently, and some family members will not be able to afford the travel to Colorado.

In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Raymond v. Kuhns*, 2018 Ark. App. 567, 566 S.W.3d 142. A finding is clearly erroneous when, although there is evidence to support it, the reviewing

court is left with the definite and firm conviction that a mistake has been made. *Id.* We give due deference to the superior position of the circuit court to evaluate and judge the credibility of the witnesses, and this deference is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.* It is well settled that the primary consideration is the welfare and best interest of the child, while other considerations are merely secondary. *Id.*

In *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), the supreme court announced a presumption in favor of relocation for custodial parents with sole or primary custody. The noncustodial parent has the burden to rebut this presumption, and the custodial parent no longer has the responsibility to prove a real advantage to herself or himself and to the children in relocating. *Hollandsworth*, *supra*. The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) the visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) the preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference. *Id.*

The circuit court discussed the above factors before concluding that Draper had rebutted the presumption and that relocation was not in AAD's best interest. The court

first found that Armstrong had "failed to provide a credible reason to relocate." The court noted that Armstrong would have the same employer with substantially similar pay; that there was no testimony that Armstrong's mother would relocate to Colorado if Armstrong did not relocate; and that Armstrong had not made living arrangements in Colorado. Regarding the educational, health, and leisure opportunities in Colorado, the court found that there was no testimony regarding AAD's prospective schools, doctors, or leisure activities beyond Armstrong's testimony that there were "great" educational opportunities. On the third factor, the visitation and communication schedule for the noncustodial parent, the court found that, considering the significant distance and Armstrong's testimony regarding proposed visitation for Draper, allowing the relocation would effectively deprive Draper of any meaningful contact with AAD and impair his ability to sustain a significant relationship. Regarding the effect of the move on the extended family relationships, the circuit court found that both Draper and his sister testified that relocation would drastically reduce visitation with Draper's family and would have a detrimental effect on AAD's relationship with that side of the family. The court found that Armstrong provided no significant testimony regarding any effect that a relocation would have on AAD's maternal family here or in Colorado. Because AAD was only sixteen months old, the preference factor was not applicable.

Armstrong argues that instead of applying the *Hollandsworth* presumption, the circuit court improperly shifted the burden to her to demonstrate that relocation was in AAD's best interest. She first claims that the court erred in finding that she had "failed to provide a credible reason to relocate." Armstrong testified that she wanted to relocate to Colorado

7

with her mother and had a job lined up. She agreed on cross-examination that this was essentially a job available to her in Arkansas; there was no testimony that she could not obtain full-time employment in Arkansas or that she would be working less hours in Colorado.[2] However, she was not required to prove that her proposed relocation offered some material advantage. *See Fischer v. Smith*, 2012 Ark. App. 342, 415 S.W.3d 40. Because there was no evidence disputing her reasons for relocating or showing that she had an improper motive, we do not agree with the court's finding that she failed to provide a "credible reason" for relocating. Nonetheless, this is but one factor for the court to consider, and in considering the evidence de novo and the circuit court's findings as a whole, we disagree with Armstrong that this misstatement constitutes reversible error.

Regarding the second *Hollandsworth* factor, Armstrong argues that it is reversible error for the court to require her to establish evidence of superior educational, health, and leisure opportunities in Colorado Springs. The court's order merely states, however, that there was "no testimony" on these matters other than Armstrong's testimony that there were "great" opportunities.

Armstrong argues that the court's findings regarding Draper's visitation and communication schedule were in error because Draper failed to put on evidence that reduced visitation would be detrimental to AAD. This court has said that *Hollandsworth* presupposes that visitation and communication between the child and the noncustodial

---

[2]Armstrong argues that she testified that she had to work two part-time jobs in Arkansas, which made her schedule difficult because she had to juggle her duties as primary custodian. However, she cites Draper's testimony that Armstrong denied him visitation even when she was "gone the whole day" working her two jobs. Armstrong did not testify about schedule difficulties in Arkansas or improvements she anticipated in Colorado.

8

parent will be impaired; however, if there continues to be meaningful visitation, the presumption in favor of relocation is not rebutted. *Fischer, supra.* The evidence here did not show a reasonable prospect for meaningful visitation. Draper's testimony regarding his financial condition indicates little likelihood that he would be able to make frequent trips to Colorado, and Armstrong was willing to commit to only one trip a year to Arkansas. Although Armstrong testified that there were a couple of occasions when Draper had returned AAD early, he otherwise exercised visitation for a forty-eight-hour period each week. The visitation schedule provides that Armstrong agreed Draper could have other reasonable visitation, but Draper testified that he was denied such visitation even when Armstrong was working. Thus, Armstrong's testimony that they could agree to other visitation after her relocation carries little weight. This evidence is in contrast to that in *Fischer*, where there was testimony that the father regularly failed to exercise his every-other-weekend visitation, but the mother proposed visitation at least four times a year and her father testified that he was a licensed pilot and could transport the child to Arkansas.

Armstrong next claims that Draper failed to rebut the evidence that she would have family support in Colorado and failed to show that reduced visitation with his extended family would have a negative effect on AAD. Both Draper and his sister testified that AAD enjoys his time with Draper's family and that these relationships would be negatively affected by the relocation. While the relocation would offer the chance for a relationship with the family of Armstrong's aunt and uncle in Colorado, Armstrong testified that her father lives in Arkansas and that she would be returning to Arkansas to see family. She argues that her

mother had been instrumental in AAD's care, but she also said that she did not know if her mother would move to Colorado without her.

The polestar in making a relocation determination is the best interest of the child. *Hollandsworth, supra.* Whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, and we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Loving v. Loving,* 2020 Ark. App. 362, 605 S.W.3d 540. On this record, we are not left with a distinct and firm impression that the circuit court made a mistake in finding that relocation was not in AAD's best interest.

Lastly, Draper testified at the December 2017 hearing that he wanted the court to set a holiday-visitation schedule because Armstrong had not let him exercise any extra visitation on holidays. On remand, the court entered a holiday-visitation order, stating that upon review of the transcript, it determined that it had failed to address a holiday-visitation schedule in its previous order. Armstrong now argues that there were no pleadings pending before the court regarding holiday visitation, that the parties had not litigated the issue, and that the court did not have before it evidence regarding the best interest of AAD. These arguments were not raised below, however; accordingly, the issue is not preserved for appeal. *Westin v. Hays,* 2017 Ark. App. 128, 513 S.W.3d 900.

Affirmed.

GLADWIN, BARRETT, and WHITEAKER, JJ., agree.

VAUGHT and HIXSON, JJ., dissent.

10

**LARRY D. VAUGHT, Judge, dissenting**. Today's majority opinion effectively nullifies the *Hollandsworth* presumption regarding custodial-parent relocation. While my colleagues are willing to justify the circuit court's refusal to apply the *Hollandsworth* standard because they believe the circuit court ultimately reached the correct outcome, "the ends justify the means" is a dangerous judicial philosophy. The *Hollandsworth* presumption was established by the Arkansas Supreme Court, and this court is not at liberty to overturn that decision. *Blasingame v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 71, at 8–9, 542 S.W.3d 873, 878; *Metcalf v. Texarkana Sch. Dist.*, 66 Ark. App. 70, 73, 986 S.W.2d 893, 894 (1999); *Conway v. State*, 62 Ark. App. 125, 969 S.W.2d 669 (1998); *Nelson v. Timberline Int'l, Inc.*, 57 Ark. App. 34, 942 S.W.2d 260 (1997); *Cheshire v. Foam Molding Co.*, 37 Ark. App. 78, 822 S.W.2d 412 (1992); *Myles v. Paragould Sch. Dist.*, 28 Ark. App. 81, 770 S.W.2d 675 (1989).

I dissent and would reverse the circuit court's denial of Armstrong's petition to relocate because the circuit court failed to comply with our mandate. While the court parroted the language of the *Hollandsworth* presumption, it erroneously placed the burden of proof on Armstrong. In *Stills v. Stills*, the Arkansas Supreme Court rejected an attempt to negotiate away the *Hollandsworth* presumption as part of a custody agreement, holding that "the presumption is, at its core, the establishment of a legal burden of proof to be enforced by the circuit courts in deciding relocation disputes." *Stills v. Stills*, 2010 Ark. 132, at 9, 361 S.W.3d 823, 829. Armstrong, as the custodial parent, bore no such burden; it was Draper's burden to prove that relocation is not in AAD's best interest. Yet, in the present case, the circuit court's analysis of the *Hollandsworth* factors states that Armstrong "failed to

11

prove" a legitimate reason for the relocation. The court also held it against Armstrong that there was little or no evidence as to some of the other factors. Had the burden of proof been properly applied, the absence of evidence regarding any of the *Hollandsworth* factors should have weighed against Draper, not Armstrong.

Draper argues that, rather than failing to apply the presumption, the court found that he had adequately rebutted it. That finding, however, was based on the court's clear misapplication of the burden of proof. Moreover, much of the evidence he presented went to the fact that if Armstrong was allowed to relocate with AAD, it would harm the child's relationship with Draper and with Draper's family. However, we have previously held that "*Hollandsworth* presupposes that visitation and communication between the child and the noncustodial parent will be impaired. However, if there continues to be meaningful visitation, the presumption in favor of relocation is not rebutted." *Fischer v. Smith*, 2012 Ark. App. 342, at 8, 415 S.W.3d 40, 44.

This case is very similar to both *Fischer* and *Hartsell v. Weatherford*, 2012 Ark. App. 164. In *Fischer*, we reversed the circuit court's denial of a custodial parent's petition to relocate, holding that "the trial court improperly shifted the burden to [Fischer] to prove that her proposed move offered some advantage." 2012 Ark. App. 342, at 8, 415 S.W.3d at 44. In *Hartsell*, we reversed the denial of a custodial parent's relocation petition for the same reason, explaining:

> It was obvious from the trial court's findings that it improperly required Hartsell to prove that her proposed relocation to California offered some material advantage. This requirement was clearly abrogated by the *Hollandsworth* court when it overruled *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994), and its progeny. The trial court's misapplication of the law was particularly evident when it recited that Hartsell had not proved that opportunities offered by joining the

California National Guard and attending UCLA were not available in Arkansas and that the education and leisure activities in southern California were superior to those available in Hot Springs.

2012 Ark. App. 164, at 4.

I dissent from the majority opinion for the reasons stated in *Fischer* and *Hartsell*. The circuit court erroneously placed the burden on Armstrong to prove that there would be some material advantage to AAD if she relocated with him to Colorado. Without acting as a fact-finder, which is not our role, it is impossible for us to say that the court reached the "right result for the wrong reason," as the majority contends. If Armstrong had been given the benefit of the *Hollandsworth* presumption, the outcome of this case would have been different.

Today's majority opinion puts our seal of approval on the circuit court's repeated refusal to apply the law regarding the relocation of a custodial parent. "Right result, wrong reason" should never allow us to affirm a miscarriage of justice.

HIXSON, J., joins.

*Skarda Law Firm*, by: *Cecily Patterson Skarda*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Natalie Dickson* and *Lauren Hoover*, for appellee.