N. MARK KLAPPENBACH, Judge
Emily Armstrong appeals the order of the Pulaski County Circuit Court prohibiting her from relocating with the minor child born to her and appellee Martel Draper. Armstrong contends that the circuit court erred in interpreting the original custody order as granting the parties joint custody. We reverse the circuit court's order and remand for further proceedings.
Armstrong gave birth to the parties' son, AAD, in 2016. She and Draper were never married. Following a custody hearing in February 2017, the circuit court entered an order on April 17, 2017, providing that "[d]ue to the age of the child and the need for continued contact, the parties shall share joint legal custody of the minor child with mother being the primary custodian." The court ruled that until the child turned one year old, the visitation schedule would remain as previously ordered in the court's December 2016 order that was entered pending the final trial. That order granted Draper visitation on Monday and Wednesday evenings from 6:15 p.m. until 9:00 p.m. as well as every Friday from 10:00 a.m. until Saturday at 6:00 p.m. Once the child turned one year old, the court granted Draper visitation as follows:
a. every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m.
b. on the weeks that Father does not have his weekend parenting time he shall have two overnights. Unless otherwise agreed by the parties, these overnights shall be Wednesday from 8:00 a.m. until Friday at 8:00 a.m.
c. All other times by agreement. Mother expressed to the Court that Father is welcome to visit with the minor child any other reasonable time. If this turns out to be a false promise, Father may petition the Court for relief.
The order also set out Draper's child-support obligation, ruled that the parties should equally divide the cost of uncovered medical expenses, and ruled that Armstrong was entitled to claim the child each year as a tax dependent.
In June 2017, Draper filed an ex parte emergency petition for relief, alleging that Armstrong intended to relocate to Colorado with ten-month-old AAD and requesting an order prohibiting her from moving pending a full hearing on the merits. The hearing was held on December 6, 2017. Armstrong testified that when she became pregnant with AAD, her mother moved from Colorado to live with her. Her mother now wished to move back to Colorado, and Armstrong wanted to relocate with her and the child. Armstrong explained that her mother had been very instrumental in helping both her and Draper care for the child by keeping him when they were *62 at work. In addition to having her mother's assistance in Colorado, Armstrong said that she would have support from her aunts and extended family, although they had not yet met AAD. Armstrong had a full-time job lined up in Colorado as a makeup artist with MAC Cosmetics; in Little Rock she worked part time for MAC Cosmetics and part time at a restaurant.
Armstrong said that Draper had exercised his visitation as outlined in the order, which amounts to two days a week, but there had been times when Draper had picked the child up late or ended the visitation early. Armstrong recounted a time when she left work early to pick the child up because Draper said that he was having a hard time with the child at bedtime and he was busy packing to go out of town. On another occasion, Armstrong said that Draper brought the child back to her at night because the child was sick. Armstrong testified that Draper had not exercised visitation beyond the designated times on a consistent basis. She said that there had been a few times that Draper had spent time with the child on days when he did not have visitation, but there had also been times that he did not show up when she offered a time to come by. Armstrong was concerned about leaving the child with Draper for extended periods of time because there had been issues with the child returning to her care with bad diaper rash and "smelling like an ashtray." Armstrong said that she had been the one taking the child to the doctor-aside from one appointment-and that she planned the child's meals and activities even during Draper's visitation time. She said that Draper had not been responsible with those kinds of things when the child was in his care. Armstrong said that she had not been able to rely on Draper for financial assistance because he had missed child-support payments.
Draper testified that he had made all his child-support payments through August 2017, but he had been laid off from his job in March 2017 and had not worked since then, aside from some occasional contract work. He said that he had been living off credit cards and his family helped him out, but he bought everything for the child that was needed at his house. Regarding extra visitation time as contemplated in the custody order, Draper said that Armstrong tells him that he can come visit but does not allow him to take the child. He said that it usually did not work out when he tried to come see the child because Armstrong would get back to him too late regarding a time to come. He also said that Armstrong refused to let him make up visitation time he missed on one occasion when he had to go out of town for work. Draper said that he is close with his parents, siblings, and other extended family who all live in Arkansas and spend time with the child. Draper's sister testified that the whole family is close with the child, and she tried to see him every time Draper had visitation.
After the hearing, the parties submitted letter briefs to the court disputing the proper analysis to be applied in the case. The circuit court entered an order finding that the case should be analyzed as a joint-custody case under the requirements set out in Singletary v. Singletary , 2013 Ark. 506, 431 S.W.3d 234. Under this analysis, the court found that both parties had testified that there had been no material change of circumstances and found that relocation would not be in the best interest of the child. Accordingly, the court granted Draper's request for an order prohibiting Armstrong from relocating with the child.
On appeal, Armstrong argues that the circuit court erred in finding that the parties exercised joint custody and in *63 failing to apply the Hollandsworth[1] presumption in favor of relocation for custodial parents with primary custody. In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. McNutt v. Yates , 2013 Ark. 427, 430 S.W.3d 91. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. Id. This deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. Id.
In determining whether a parent may relocate with a minor child, a circuit court must generally look to the principles set forth in our supreme court's decisions in Hollandsworth and Singletary . In Hollandsworth , the supreme court announced a presumption in favor of relocation for custodial parents with sole or primary custody, with the noncustodial parent having the burden to rebut this presumption. In Singletary , the court explained that the Hollandsworth presumption does not apply when the parents share joint custody of a child. In a joint-custody arrangement where both parents share equal time with the child, there is not one parent-child relationship to take preference over the other, and the Hollandsworth rationale is inapplicable. Singletary, supra. The proper analysis for a change-in-custody request due to the relocation of one parent in a joint-custody situation is the same as that when relocation is not involved; the court must first determine whether a material change in circumstances has transpired since the initial custody order and then whether the change in custody is in the best interest of the child. Id.
In determining whether Armstrong was entitled to the Hollandsworth presumption under the facts in this case, we first look to the language in the initial custody order. See Cooper v. Kalkwarf , 2017 Ark. 331, 532 S.W.3d 58. An order such as the one here that awards the parties joint legal custody but designates one party as the primary physical custodian is ambiguous, and it is proper to review the parties' subsequent statements and conduct. See id. Here, the evidence showed that Draper exercised his visitation two days a week as set out in the order, but he did not see the child much beyond those times. Rather than examining the parties' conduct, the circuit court here relied on the custody order, finding that "[t]here is language in the Order in this case that the percent of visitation by the Plaintiff is enhanced, and that the additional visitation promised should not be a false promise by the Defendant."
Armstrong argues that the circuit court's characterization of the order is clearly erroneous. As stated above, the order provides that in addition to the designated times, Draper would have visitation at
[a]ll other times by agreement. Mother expressed to the Court that Father is welcome to visit with the minor child any other reasonable time. If this turns out to be a false promise, Father may petition the Court for relief.
Armstrong contends that Draper's visitation was 28.5 percent of the time, or four nights out of every fourteen, and that even with other reasonable agreed upon visitation, the arrangement did not amount to joint custody.
*64 In Cooper , the supreme court clarified its prior holdings and held that the Hollandsworth presumption should be applied only when the parent seeking to relocate is not just labeled the "primary" custodian in the custody order but also spends significantly more time with the child than the other parent. The court emphasized that a joint-custody arrangement does not necessarily involve a precise "50/50" division of time and noted that parental influence and commitment, involvement in the child's daily activities, and responsibility for making decisions on behalf of the child are important factors in the circuit court's consideration of the relocation issue. In Cooper , the supreme court reversed for an application of the joint-custody-relocation analysis because the divorce decree awarded the father visitation 42.9 percent of the time, and he also spent time with the child beyond what was awarded such that he had contact with the child on at least 60 percent of the days in a year.
Based on these standards, we conclude that the circuit court's findings were clearly erroneous. The evidence showed that Armstrong spent significantly more time with the child than did Draper. The fact that the custody order provided that Draper could "visit with the minor child any other reasonable time" did not elevate the arrangement to one of joint custody. Accordingly, we reverse and remand for the circuit court to apply the Hollandsworth presumption.
Reversed and remanded.
Harrison and Glover, JJ., agree.

Hollandsworth v. Knyzewski , 353 Ark. 470, 109 S.W.3d 653 (2003).