Cite as 2020 Ark. App. 74

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-589

| | |
|---|---|
| LACHE PRICE<br><br>APPELLANT<br><br>V.<br><br>CHRISTOPHER D. PRICE<br>APPELLEE | **OPINION DELIVERED:** February 5, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION<br>[NO. 60DR-18-1061]<br><br>HONORABLE VANN SMITH, JUDGE<br><br>REVERSED AND DISMISSED |

**ROBERT J. GLADWIN, Judge**

Appellant Lache Price appeals the April 26, 2019 order from the Pulaski County Circuit Court. She argues that the circuit court erred as a matter of law in considering evidence that was barred by collateral estoppel and res judicata and that the circuit court erred in its application of *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234, allowing appellee Christopher Price to relocate with the parties' minor child to Indiana. Because the circuit court failed to make a requisite finding as to whether there had been a material change of circumstances, we reverse and dismiss.

## I. *Facts*

Prior to the parties' separation, they resided together with their minor child, H.P., in South Dakota, where Christopher served in the military. In August 2017, Lache traveled to Arkansas to look for places for the family to move after Christopher fulfilled his military obligations. Shortly thereafter, Lache informed Christopher that she wanted a divorce and

would not be returning to South Dakota. Christopher eventually moved to Arkansas in early 2018 after learning that Lache was living with Jeff Ingram, a convicted felon,[1] and was pregnant with Ingram's child.[2]

Christopher filed a complaint for divorce on March 21, 2018, on the basis of the general-indignities ground, and on April 19, Lache timely responded and counterclaimed for divorce on the same ground. At the final divorce hearing on November 1, evidence was presented to the circuit court concerning, among other things, Lache's boyfriend, Ingram; Christopher's anticipated move to Indiana and the town where he wished to relocate; issues relating to Lache's vehicle;[3] and Lache's residential moves since coming to Arkansas. Christopher specifically notified the circuit court that he intended to move to Indiana and that he thought he and H.P. would have a better life in Indiana for both economic and family-support reasons.

The circuit court ruled that because no motion to relocate had been filed in the case, it would not consider the issue of Christopher's relocation to Indiana but would take it up later, after Christopher filed a formal motion to relocate. The circuit court informed Lache that "there is a possibility that (Christopher will) get to move with the child to Indiana . . . . But I'm going to at least make him go through the legal procedures to do so." At the

---

[1]It is undisputed that Ingram had fulfilled his parole requirements.

[2]It appears that this child was born prior to the parties' divorce, but nothing in the record before us indicates whether the child was deemed a child of the marriage, whether Ingram was listed on the birth certificate, etc.

[3]It was undisputed that Lache's vehicle was not registered, that she did not have liability insurance on the vehicle, that she did not have an Arkansas driver's license, that she had not made a payment on her vehicle in many months, and that she had no income.

end of the hearing, the circuit court noted that both parties were "good parents" and granted true joint custody while reserving in the divorce decree entered on November 30 Christopher's ability to petition for relocation.

On December 11, Christopher filed a motion for modification and relocation. In his motion, Christopher pleaded, "Based upon all the factors that were evident during the divorce proceedings, it would be in the best interests of the child that he be allowed to relocate to Indiana" and "that [Christopher's] relocation constitutes a material change in circumstance for which modification should be based." Lache retained counsel and filed an answer to the motion on January 30, 2019.

At the April 12 hearing on Christopher's motion for modification and relocation, Lache's counsel argued that Christopher had not pled a sufficient material change in circumstances and that the already litigated issues were barred by collateral estoppel or should have been previously litigated per res judicata. Over Lache's objections, the circuit court heard testimony as to why Christopher wanted to relocate to Indiana; details on two jobs and daycare for H.P. that he had secured since the last hearing; issues concerning Ingram; Lache's residential moves since coming to Arkansas; problems with Lache's vehicle; and the parties' reasons for moving to Arkansas.

In closing statements, counsel for Lache argued that Christopher did not argue a sufficient material change under *Singletary*, *supra*. The circuit court disagreed and also found that it had not tried the issue of relocation but had instead specifically reserved that issue. Accordingly, the circuit court found that the issue of relocation was not res judicata and that the related evidence would be allowed.

On April 26, the circuit court granted Christopher's motion for modification and relocation. In its order, the circuit court noted Christopher's two job offers in Indiana; the substantial help available from his siblings in Indiana; Lache's lack of income; Lache's duties to her disabled daughter by her adulterous relationship with Ingram; Lache's cohabitation with Ingram, a convicted felon; and Lache's lack of secure transportation. Nothing in the order, however, analyzes or constitutes a finding with respect to the material–change–of–circumstances issue. The circuit court merely stated that *Singletary* was the appropriate case to apply and found that it was in H.P.'s best interest to relocate to Indiana with Christopher. On May 8, Lache filed her notice of appeal of the circuit court's order.

## II. *Standard of Review and Applicable Law*

This court recently reiterated its well-settled de novo standard of review in cases involving child custody that it will not reverse a circuit court's findings unless they are clearly erroneous. *Williams v. Williams*, 2019 Ark. App. 186, at 19–20, 575 S.W.3d 156, 163–64. "A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed." *Id*. Special deference is given to the superior position of the circuit court to evaluate witnesses, their testimony, and the child's best interests. *Id*. However, a circuit court's conclusions of law are given no deference on appeal. *Fischer v. Smith*, 2012 Ark. App. 342, at 1–2, 415 S.W.3d 40, 40–41.

## III. *Discussion*

We initially dispose of Lache's argument that the circuit court erred as a matter of law in reconsidering evidence that was barred by collateral estoppel and res judicata. At the

4

hearing on the motion to relocate, Lache objected to any evidence that had been introduced in the divorce hearing being reintroduced at the hearing on the motion to modify and relocate, stating that the issue had been litigated before and that the evidence was barred by collateral estoppel or res judicata. The circuit court responded, clearly stating the following:

> Well, I think he wanted to get into the relocation the last time, it wasn't pled so I wouldn't let him do it. I mean, it's not that he didn't attempt to, but I thought he should have to file a motion to give your client a chance to respond—you know, know [sic] that what she's responding to, because she wouldn't have known.

This court has held that

> [t]he doctrine of res judicata is not strictly applicable in child-custody matters. Our supreme court favors a more flexible approach to res judicata in these settings to allow a trial court to respond to asserted changes in circumstances and the best interest of the child. The trial court's retention of jurisdiction over child-custody and visitation matters, and the requirement of a showing of materially changed circumstances, support the logic behind a more flexible approach in child-custody and visitation cases.

*Bamburg v. Bamburg*, 2014 Ark. App. 269, at 9, 435 S.W.3d 6, 12 (internal citations omitted).

Paragraph 8 of the divorce decree provides:

> That [Christopher] has indicated a strong desire to relocate from central Arkansas to Indiana. [Christopher] is hereby directed to petition the Court before leaving the state with the parties' minor child on a permanent basis. Until said time, [Christopher] is allowed to take his child to visit with [Christopher's] family in Indiana for up to a week at a time. [Christopher] shall give [Lache] notice of his intent to take the child to Indiana for visits no less than seven (7) days in advance.

Having considered the rationale set forth in *Bamburg*, *supra*, accompanied by the clear language of the divorce decree indicating that the issue of relocation is reserved pending the filing of a motion for relocation, we hold that the circuit court did not err in allowing and considering evidence relating to Christopher's proposed relocation at the hearing on his motion to modify and relocate.

Next, Lache argues that the circuit court erred in its application of *Singletary, supra.* In cases seeking to determine whether a parent may relocate with a minor child, the circuit court must generally look to the principles set forth in our supreme court's decisions in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), and later in *Singletary*. *See Armstrong v. Draper*, 2019 Ark. App. 114, at 5, 571 S.W.3d 60, 63. In *Hollandsworth*, our supreme court announced a presumption in favor of relocation for parents who have sole or primary physical custody, with the noncustodial parent having the burden to rebut this presumption. *Id*.

In *Singletary*, the supreme court removed any such presumption when parents share equal joint physical custody. The proper analysis for a change-in-custody request due to the relocation of one parent in a joint-custody situation is the same as that when relocation is not involved; the court must first determine whether a material change of circumstances has transpired since the last order on custody and whether the change in custody is in the best interest of the child. *Raymond v. Kuhns*, 2018 Ark. App. 567, at 2, 566 S.W.3d 142, 144. The main consideration in a case involving child custody is the welfare and best interest of the child, and all other considerations are secondary. *Id*. at 2, 566 S.W.3d at 143. When a party is requesting a change of custody, it is that party's burden to show that there has been a material change of circumstances since the original order establishing custody or that there were facts not presented at the initial hearing that would bear on the best interest of the child. *See Ryan v. White*, 2015 Ark. App. 494, at 9, 471 S.W.3d 243, 249.

Here, it is undisputed that *Singletary* governs, given this true joint-custody situation. The visitation schedule included in the divorce decree provides for an almost evenly divided

share of time with H.P. for each of the parties, and that is a continuation of the parties' coparenting practice in the months leading up to the divorce in which the parties exchanged H.P. every two days.

Lache argues that the circuit court clearly erred in granting Christopher's motion because there was no material change of circumstances between the final divorce decree entered on November 30, 2018, and the order granting Christopher's motion to modify and relocate entered a mere five months later on April 26, 2019. She submits that the circuit court's final order following the relocation hearing included bases for its conclusions from the same evidence presented at the divorce hearing, including, but not limited to the following, (1) Lache's moving to Arkansas, becoming pregnant with a child with Ingram, a convicted felon, and the child having a disability; (2) Christopher's desire to move to Indiana because he had family and potential employment there; (3) the instability of Lache's home life because of her boyfriend's and her lack of employment and; (4) evidence regarding Lache's vehicle and its registration. Lache maintains that there were no material facts that existed at the time of the final divorce hearing that were unknown to the court.

Lache argues that if the circuit court believed it was in H.P.'s best interest to relocate to Indiana with Christopher following the hearing on the motion to relocate, then it should have granted primary physical custody to him following the initial divorce proceeding because the decision was based on the same testimony. The circuit court likewise could have prevented this controversy by reserving the final determination of custody and maintaining the temporary joint-custody arrangement the parties had been following pending Christopher's filing of a motion to relocate, at which time it could have made an

7

initial custody determination based on the best-interest analysis. Instead, following a full hearing on the merits of the issue of custody, which took place as part of the November divorce hearing, the circuit court determined that true joint custody was in H.P.'s best interest: "The parties are hereby awarded joint custody of the parties' minor child and shall continue with the joint custody arrangement that the parties have been utilizing since the filing of the Complaint in this matter."

Despite the circuit court stating that it had utilized *Singletary* in its analysis, Lache maintains that it instead appeared to afford Christopher the *Hollandsworth* presumption in favor of relocation. While it is evident from the express language of the order resulting from the relocation hearing that the circuit court made the requisite best-interest finding, the order is void of any material-change-in-circumstances finding.

Although Christopher argues that the evidence presented at the relocation hearing that he was moving to Indiana, that he had secured two jobs and daycare for H.P. in Hartford City, Indiana, and that his siblings in Indiana were able and willing to provide substantial help combined with the circuit court's reserving the relocation issue and ruling only that joint custody was appropriate under the circumstances of both parties living in close proximity constitute a material change in circumstances, it is undeniable that the circuit court failed to include the requisite material-change-of-circumstances finding in its order granting Christopher's motion to modify and relocate.

Accordingly, we are left with a definite and firm conviction that a mistake has been committed by the circuit court. In the divorce hearing, the circuit court was required to make a best-interest finding and did so when it ruled to maintain the parties' joint-custody

8

arrangement. But the circuit court then incorrectly applied *Singletary* because it failed to make a material-change-of-circumstances finding from the time of the initial custody determination. Accordingly, we reverse and dismiss.

Reversed and dismissed.

HARRISON and WHITEAKER, JJ., agree.

*WH Law*, by: *Charlie Cunningham*, for appellant.

*Knollmeyer Law Office, P.A.*, by: *Michael Knollmeyer*, for appellee.