Cite as 2023 Ark. App. 571

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-23-70

| | | |
|---|---|---|
| | | Opinion Delivered December 6, 2023 |
| JOSEPH CAPPELLUZZO | | |
| | APPELLANT | APPEAL FROM THE MARION COUNTY CIRCUIT COURT [NO. 45DR-14-76] |
| V. | | |
| JUDITH COLE | | HONORABLE ANDREW S. BAILEY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Joseph Cappelluzzo appeals the decision of the Marion County Circuit Court changing custody of the three children he shares with his ex-wife, appellee Judith Cole. On appeal, he argues that no material change in circumstances occurred to warrant a change in custody, and further, the change of custody was not in the children's best interest. We affirm.

The parties were married in November 2002 and divorced on September 29, 2014. Five children were born of the marriage. Prior to the immediate litigation, custody of the minor children was controlled by an order entered in October 2017. Of relevance, that order provided that Joseph would have primary custody of MC1, and the parties would share joint custody of MC2 and MC3. In February 2022, Joseph moved to hold Judith in contempt for withholding visitation of MC1 and MC2. On July 20, 2022, Judith petitioned to change

custody of the children and to relocate. She pleaded that she had two of the children in her exclusive custody for months, her home was listed for sale by the owner, and she sought to relocate to Michigan. At a hearing on the motions, the court heard testimony from Judith, Joseph, and four of the parties' five children. At the conclusion of the hearing, the court changed custody to Judith, explaining that

> [t]he children each testified that there was significant conflict between [MC1] and Mr. Cappelluzzo, which eventually led to his not returning to his father's home for visitation. Mr. Cappelluzzo acknowledged the conflict while testifying that he believes [MC1]'s conduct is the same in both parties' homes. While there was no single event leading to[MC1]'s cessation of visiting with his father, he has not had any visitation with him since January. [MC2] . . . also stopped going to visitation when [MC1] did. Each of the children testified at the hearing, and the Court has taken their testimony into serious consideration to determine that a material change of circumstances exists to modify the custody order in this case.

The court also found that the change in custody would be in the children's best interest.

On appeal, Joseph argues that the circuit court erred in changing custody. He contends that there has been no material change since the entry of the last custody order and that changing custody to Judith is not in the children's best interests because she has not supported their relationship with their father and has spoken poorly of Joseph in the children's presence. He further explains that Judith, who has been held in contempt of court twice over her parenting decisions, has not demonstrated a history of behavior that indicates she would be the best custodian.

In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *McNutt v. Yates*, 2013 Ark. 427, at 8, 430 S.W.3d 91, 97. A

2

finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Boudreau v. Pierce*, 2011 Ark. App. 457, at 11, 384 S.W.3d 664, 671. It is well settled that the primary consideration is the welfare and best interest of the child, while other considerations are merely secondary. *Raymond v. Kuhns*, 2018 Ark. App. 567, at 1–3, 566 S.W.3d 142, 143–44. We give special deference to the superior position of the circuit court to evaluate and judge the credibility of the witnesses in child-custody cases, and this deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

The proper analysis for a change-in-custody request due to the relocation of one parent in a joint-custody situation is the same as that when relocation is not involved: the court must first determine whether a material change in circumstances has transpired since the last order on custody and then determine whether the change in custody is in the best interest of the child. *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234. Neither party disputes the application of a joint-custody relocation analysis under these facts.

Joseph first challenges the court's material-change finding. He contends that neither the children's preference nor Judith's upcoming move constitutes a material change of circumstances. He cites *Price v. Price*, 2020 Ark. App. 281, at 9, 599 S.W.3d 403, 408, for the proposition that because Judith had not yet moved, there was no material change. However, in *Price*, this court chastised the circuit court for hearing the evidence of relocation at the

divorce hearing but then making a joint-custody finding in the divorce decree. Instead, we explained, it should have either reserved the final determination of custody or entered a temporary order. On the relocation petition, the circuit court changed custody but was silent regarding a material-change finding. On appeal, we were unable to ascertain any evidence that was different from that presented at the divorce hearing and held that no facts were presented to support a material-change finding, especially given the lack of a recited finding by the court. *Id.*

Here, the evidence presented was that Judith was remarried; her husband had good work in Michigan; the home she was renting in Arkansas was listed for sale, and she had to be out three days after the hearing; she and her husband had purchased a home in Michigan that was twice the size of the home they had in Arkansas; and she has family in Michigan. Judith said she did not have a home in Arkansas in three days' time and was moving to Michigan with or without the children.

Regardless, the circuit court held that its decision that a material change had occurred was based on the children's testimony, not necessarily the impending move.

Concerning the children's testimony, Joseph argues that their recited preference is not a material change but merely a factor to be considered. In *Hobby v. Walker*, the circuit court found that there was no material change when the father had a strict parenting style and the fourteen-year-old daughter expressed a desire to live with her mother. 2011 Ark. App. 494, at 8, 385 S.W.3d 331, 336. On appeal, we affirmed because even the mother and the child conceded that the circumstances had not changed, with the exception of the

4

daughter's desire to live with her mother. The *Hobby* court wrote, "The trial court . . . had the discretion to decline to give weight to the child's preference, and the child's desires were not binding on the court." *Id.* at 8, 385 S.W.3d at 336.

Compare *Hobby*, however, with *McCoy v. Kincade*, 2015 Ark. 389, 473 S.W.3d 8. In *McCoy*, the circuit court found a material change in circumstances when the children testified that their social, school, and sports schedules were negatively affected by their parents' visitation schedule, and it was causing them both to have a strained relationship with their mother. We wrote:

> The factors in this case are all factors that we have held are appropriate when determining if there has been a material change of circumstances. These factors include, but are not limited to, one parent's relocation, the passage of time, remarriage of one or both parents, strained relationship between the parent and child, and the preference of the children. *See Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002); *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999). All of these factors were present in this case and their combined effect supports the circuit court's holding that there was a material change of circumstances.

*Id.* at 5, 473 S.W.3d at 11.

Here, MC3 testified he liked spending time with his dad, but MC1 testified he was afraid of his dad. MC1 and MC2 had stopped going to their father's house in January 2022. MC1 said Joseph had told him to "leave and not come back." MC1 testified his dad did not contact him from January 2022 until MC1 sent an email to him in June 2023. He said he felt written off by his father. Joseph went from January 2022 until about August without seeing MC2. He never reached out to her, and she testified that she was the one who had to initiate contact. MC2 said that Joseph gives her anxiety. At one point she was suicidal and

5

cutting herself, but therapy has helped. MC2 testified that over the period from January until August he never reached out to her, and that she was upset when he did not call her on her birthday.

Joseph blames his lack of visitation on Judith. He says she was bound by court order to get the children to him and that she should have called the sheriff to help her get the children to him. Judith said that she told the children that they have to go to their father's but she could not force them. "Physically I'm not going to force [you]," she said. Judith testified that she encouraged the children to go but "they already told me no, and . . . they're both taller than me, and I'm not going to physically wrestle them into the car."

When asked why he did not take any measures to reach out to the children to attempt to reconcile their relationships, Joseph explained he was trying to give the children time to figure things out. He testified, "You can't beat a dead horse. You can't talk to somebody who doesn't want to talk to you." And so, while Joseph contends that Judith is the one who withheld visitation, Joseph never reached out to his own children and never tried to visit them at school or attempt to initiate any meaningful contact with two of his own children for almost seven months. Instead, he did what amounts to waiting and hoping they would come around.

The above evidence amounts to far more than a "preference." Two of the children and their father had a significant falling out, and Joseph did not take any real measures beyond a wait-and-see approach for almost seven months. Given that Judith was days away from relocating, and two of the children were barely on speaking terms with their father, it

was not clearly erroneous for the circuit court to find this was a material change in circumstances sufficient to warrant a change of custody. The court explained that this same evidence also supports the best-interest finding, and we cannot say it is clearly erroneous.

Joseph points to the finding of contempt against Judith as a reason why the children should not be placed in her sole custody. It is true that in the very same order in which the court modified custody, the court also held Judith in contempt for not fostering goodwill between her children and Joseph. The court found that Judith had spoken negatively about Joseph in front of the children, and further, "[Judith's] instruction to their daughter that she did not have to visit with their father if she did not want to is also in violation of the custody provisions of the order." Joseph argues that this demonstrates that Judith should not be awarded custody. At the core of this argument, however, Joseph asks us to reweigh the evidence. This we will not do. *See, e.g., Schnick v. Russell*, 2022 Ark. App. 212, at 11, 645 S.W.3d 345, 351. The court found that Judith was not the cause of the estrangement, it considered her part in the children's falling out with their father—such that it was—and still concluded that it was in their best interest to award Judith custody. We cannot say the court clearly erred.

Affirmed.

GLADWIN and THYER, JJ., agree.

*Emily C. Reed*; and *Blair & Stroud*, by: *Barrett S. Moore*, for appellant.

*Benjamin Gibson*, for appellee.