Cite as 2025 Ark. App. 180

# ARKANSAS COURT OF APPEALS
## DIVISIONS III & IV
### No. CV-23-749

| | |
|---|---|
| MICHEL HUGHES<br><br>APPELLANT<br><br>V.<br><br>BENJAMIN BRIGHT<br><br>APPELLEE | Opinion Delivered March 19, 2025<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-19-979]<br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Michel Hughes appeals the order of the Garland County Circuit Court granting appellee Benjamin Bright's motion for modification of custody. Michel contends that the circuit court erred in finding that a material change in custody had occurred and that it was in the best interest of the couple's three children to modify the custodial arrangement. We affirm.

## I. *Background*

Michel and Ben were married in 2008 and have three children: MC1, born 01/29/10; MC2, born 02/23/13; and MC3, born 03/15/15. The couple separated after Michel obtained an order of protection against Ben on November 20, 2019. Ben filed a

complaint for divorce on December 6, 2019, seeking joint custody of the children.[1] Michel counterclaimed for divorce in February 2020, seeking primary custody of the children and child support. Following Michel's counterclaim, Ben amended his complaint to seek primary custody of the children.

In June 2020, Ben filed a petition to show cause, asserting that Michel had not allowed reasonable visitation between him and the children. He noted that even though the order of protection did not include the children, Michel had never allowed any overnight visits, had allowed only six visits between December 2019 and March 2020, and had allowed no visits or telephone contact since March 15. He added that she had moved to El Dorado without giving anyone notice, failed to answer his discovery requests, and failed to file an affidavit of financial means or her certification of having completed a court-ordered parenting class. Because of Michel's parental alienation and interference with visitation, Ben asked that she be ordered to appear and show cause why she should not be held in contempt; in addition, he asked to be given temporary custody of the children for the remainder of the summer.

During a hearing on July 8, 2020, the court heard testimony from the children's counselor as well as from Ben and Michel. At the conclusion of the hearing, the court determined that it was in the best interest of the children to be placed in Michel's and Ben's joint custody. Because Michel claimed that MC2 told her that MC1 had sexually abused

---

[1]The order-of-protection case was transferred to the same division of the Garland County Circuit Court as the divorce case on December 17.

2

him, the court ordered that visitation should be one week on, one week off, with MC1 separated from both MC2 and MC3 and spending alternating weeks with each parent. A temporary order memorializing the court's findings was entered on July 14, 2020.

On January 12, 2021, the circuit court entered a decree granting Ben the divorce. The decree awarded joint physical and legal custody of all three children, with an approximate and reasonably equal division of time with the children by both parties. The custody schedule continued the arrangement by which one party would have the two younger children while the other party had the oldest child on an alternating weekly schedule. The decree directed the parties to refrain from having overnight guests of the opposite sex in the presence of the children, to have sleeping arrangements and safety plans for the children approved by their counselors to ensure that the children felt safe and were sleeping in beds separate from each other, and to enroll the children in school in a timely manner.

On December 22, 2021, Ben filed a petition for emergency ex parte change of custody alleging that Michel decided on her own to admit MC1 to an inpatient behavioral-health facility after a physical altercation between them on December 20. According to the petition, when Michel took MC1 to the facility, he jumped out of the car and ran into the woods, necessitating police involvement to help find him. MC1 was placed with Ben, but Michel told him she still intended to place him in an inpatient facility, which Ben did not believe was the "best place for the child at this time." Ben therefore asked for an emergency ex parte order allowing him to keep MC1 in his custody until a hearing could be held. Before the court ruled on the emergency petition, however, Ben moved to nonsuit it on December 28.

Ben subsequently filed a petition for change of custody on January 4, 2022, asserting that there had been a material change of circumstances and that Michel was unable to meet the children's emotional, behavioral, and educational needs. He claimed that, despite the directive in the divorce decree that the children should have counselor-approved sleeping arrangements and safety plans, such arrangements were not in place in Michel's home. Ben also alleged that Michel refused to enroll all the children in school, in violation of the divorce decree ordering them to be enrolled in school. Ben further asserted that Michel had a live-in boyfriend, again in violation of the decree. He cited the incident addressed in his emergency petition, and he discussed another incident in which MC1 left Michel's home without her knowledge and rode his bike to church, thus suggesting that Michel "does not supervise MC1 appropriately."

In the following months, the parties filed several emergency ex parte motions for relief. In June 2022, Michel filed a motion to prevent Ben from removing MC1 from the inpatient mental-health facility where she had just admitted him. Ben responded that he had not been part of the decision-making process regarding MC1's mental-health care and asked the court to deny Michel's request. Ben then filed a motion in August 2022 in which he complained that Michel allowed MC1 to attend school but that she refused to send the other two children during her alternating weeks of custody; he asked the court to enter an order requiring all the children to attend public schools until a hearing could be held. Michel objected, pointing out that Ben had enrolled the children in public schools without discussing the issue with her.

Michel filed a countermotion to change custody in November 2022, agreeing that there had been a material change in custody. She asserted that she had been homeschooling the children, but Ben enrolled them in public school without notifying her or discussing the issue. She further alleged that Ben had refused to cooperate with the children's therapy and treatment plans and had refused to give them their prescribed medications. She claimed he "refuses to coparent" with her, did not keep her advised about the children when they were with him, and did not communicate with her about matters concerning the children. Michel also alleged that Ben refused to follow therapists' recommendations to keep the other children separated from MC1 and that he did not take the true finding of abuse against MC1 seriously. Michel therefore argued it was in the children's best interest that she be awarded primary custody of the children.

The circuit court held a hearing on November 29, 2022, to consider the question of the children's schooling and to address the parties' dispute on that subject--i.e., Michel's desire to homeschool them and Ben's preference to have them enrolled in public school. At the time of the hearing and for the preceding three months, MC3 had been attending second grade in public school every other week when she was in Ben's custody and was being homeschooled while in her mother's custody on the weeks in between. At the conclusion of the hearing, the court determined that the language in the decree requiring the children to be enrolled in school meant that they should "go to public school until such time as the Court enters an order otherwise."

The final hearing on the parties' competing motions for modification of custody was held over two days in April and July 2023. The court heard voluminous testimony about the parties' difficulties communicating, Ben's move from Hot Springs to Glen Rose, their different parenting styles and inability to coparent, their differences of opinion on the best course of mental-health treatment for the children, their opposing preferences regarding the children's schooling, and their concerns for the children's safety. At the conclusion of the hearing, both Michel and Ben argued that the joint-custody arrangement was not working and that there had been a material change in circumstances. The circuit court agreed, finding that Michel and Ben "come at this parenting at two polar opposites on how to do things." Accordingly, the court found that joint custody was no longer viable, there had been a material change in circumstances, and it was in the children's best interest to place them in Ben's custody, subject to Michel's visitation.

The court's final order of custody was entered on August 11, 2023. Michel timely appealed, and she now argues that the court's decision to modify the joint-custody arrangement was clearly erroneous.

## II. *Standard of Review*

Child-custody cases are reviewed de novo on appeal, but we will not reverse a circuit court's findings of fact unless they are clearly erroneous. *Carrillo v. Morales Ibarra*, 2019 Ark. App. 189, 575 S.W.3d 151. A finding of fact is clearly erroneous if, after reviewing all the evidence, the appellate court is left with a definite and firm conviction that a mistake has been made. *Id.* Whether a circuit court's findings are clearly erroneous turns largely on the

6

credibility of the witnesses; therefore, we give special deference to the circuit court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Redman v. Redman*, 2024 Ark. App. 562, 701 S.W.3d 40. There are no cases in which the circuit court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id.* The primary consideration in child-custody cases is the welfare and best interest of the child; all other considerations are secondary. *Id.*

III. *Discussion*

Modification of custody is a two-step process: first, the circuit court must determine whether a material change in circumstances has occurred since the last custody order; and second, if the court finds that there has been a material change in circumstances, the court must determine whether a change of custody is in the child's best interest. *Wallis v. Holsing*, 2023 Ark. App. 137, 661 S.W.3d 284. A child-custody determination is fact specific, and each case ultimately must rest on its own facts. *Graf v. Graf*, 2024 Ark. App. 212, 686 S.W.3d 912. The combined, cumulative effect of particular facts may together constitute a material change. *Id.* We will not substitute our judgment for that of the circuit court, which observed the witnesses firsthand. *Id.*

A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child or when there is a showing of facts affecting the best interest of the child that were either not presented to the circuit court or were not known by the circuit court when the original custody order was entered. *Dorrell v. Dorrell*, 2014 Ark. App. 496, 441 S.W.3d

7

925. In making a decision whether a modification of custody is in a child's best interest, the circuit court should consider factors such as the psychological relationship between the parents and children, the need for stability and continuity in the relationship between parents and children, the past conduct of the parents toward the children, and the reasonable preference of the children. *Bamburg v. Bamburg*, 2014 Ark. App. 269, 435 S.W.3d 6; *Rector v. Rector*, 58 Ark. App. 132, 947 S.W.2d 389 (1997). In addition, failure of communication, increasing parental alienation by a custodial parent, and inability to cooperate can all constitute a material change in circumstances sufficient to warrant modification of custody. *Montez v. Montez*, 2017 Ark. App. 220, 518 S.W.3d 751. Further, we have held that the combined, cumulative effect of particular facts may together constitute a material change. *Shannon v. McJunkins*, 2010 Ark. App. 440, 376 S.W.3d 489.

Michel argues that the circuit court erred in finding that there had been a material change in circumstances that justified awarding custody to Ben. Before addressing her specific challenges to the circuit court's findings, however, we note that the main thrust of her appeal--that the court erred in finding a material change in circumstances--is at complete odds with her arguments below, where she argued strenuously that there *was* a material change in circumstances. For example, in her countermotion for modification of custody, she asserted that "[s]ince the entry of the decree, *there has been a material change of circumstances warranting a change of custody.*" She complained about Ben's enrolling the children in public school without her knowledge and his refusal to cooperate with mental-health treatment plans for the children, and she stated simply that "he refuses to coparent

8

with [her]." Staying true to her pleadings, at the hearing on the parties' motions, Michel's counsel was emphatic in his closing argument: "Your Honor, I agree with part of what [Ben's attorney] said. *I do believe there has been a material change in circumstances since the last order was entered. . . .* I think that the court *can easily find there's been a material change in circumstances . . . [and] on top of the material change in circumstances* it's in the best interest that custody be modified to mom." Michel maintained this position throughout her testimony as she described in detail many disagreements with Ben over fundamental parenting decisions, including decisions about the education, discipline, supervision, and mental-health treatment of the children.

On appeal, however, she argues that the court erred in finding a material change in circumstances on the basis of their inability to coparent. She maintains that at the time of the custody hearing, she and Ben were "better at coparenting than they had been in the first year of their separation" and that they had resolved many of their differences before the hearing. She therefore concludes that the circuit court erred by finding that their lack of cooperation constituted a material change in circumstances.

Our general rule is that a party is bound by his or her pleadings and the allegations therein and cannot maintain an inconsistent position on appeal. *See Killingsworth v. Dittmar*, 2018 Ark. App. 294, 552 S.W.3d 1. Recognizing the inconsistencies between her arguments below and here, Michel cites *Ward v. Ward*, 2019 Ark. App. 430, for the proposition that an appellant may "challenge the circuit court's material-change finding even though she had alleged in her petition to modify custody that the evidence cited by the circuit court

9

constituted a material change in circumstances." *Ward* is distinguishable from the facts before us. In *Ward*, the wife argued in her motion for modification of custody that the husband's new job constituted a material change in circumstances. By the time of the custody hearing, the husband no longer had that job, but the circuit court nonetheless found that the job created a material change in circumstances. On appeal, the wife's argument was not that the job did or did not amount to a change in circumstances but that the court erred in finding that the job was still problematic. We held that this did not amount to her changing her position on appeal.

More on point is *Killingsworth*, *supra*, which *Ward* found distinguishable. In *Killingsworth*, the mother argued in the circuit court that her move to get a better job constituted a material change in circumstances; on appeal, however, she argued that it was not. This court held that she could not change her argument on appeal, noting that "[a] party litigant is bound by his or her pleadings and the allegations therein and cannot maintain a position inconsistent therewith." 2018 Ark. App. 294, at 15, 662 S.W.3d at 9. It follows that Michele, too, cannot succeed on the merits with her new and inconsistent arguments on appeal.

A.  Material Change in Circumstances

Were we to consider Michel's arguments, we would nonetheless find them without merit. Michel challenges three factual aspects of the court's ruling: (1) the distance between the parties' homes; (2) the lack of cooperation between the parents and their different ideas

regarding parenting; and (3) the "other factors" cited by the court, including Michel's cohabitation before marriage and the stated preferences of the children.

1. *Distance between the parties' homes*

When Ben filed his complaint for divorce, both he and Michel lived in Hot Springs. During the pendency of the divorce proceedings, Michel moved to El Dorado with the children, but she and the children subsequently returned to Hot Springs, where they lived within five minutes of Ben's house. Thus, when the divorce decree was entered in January 2021, Michel and Ben both lived in Hot Springs, and they were sharing joint custody of the children, each having one week at a time. Several months after he filed his petition for change of custody in January 2022, Ben moved to Glen Rose, approximately thirty minutes away. At the conclusion of the hearing, the circuit court found the fact that the parties lived more than fifteen minutes from each other was an impediment to joint custody.

On appeal, Michel argues that Ben could not create a material change in circumstances by unilaterally deciding to relocate. Citing *Bell v. Bell*, 2022 Ark. App. 279, 646 S.W.3d 678, she argues that the court erroneously relied on Ben's moving to Glen Rose from Hot Springs to manufacture a change in circumstances. The *Bell* court noted that "an appellant cannot use the circumstances that he or she created as grounds to modify custody" and that "relocation alone is not a change in circumstances warranting a change in custody nor are circumstances created by the party seeking the modification." *Id.* at 15, 646 S.W.3d at 689. Michel also cites *Smith v. Smith*, 2023 Ark. App. 108, at 8, 661 S.W.3d 273, 278, for

11

its statement that "relocating in order to obtain employment *itself* does not constitute a material change in circumstances." (Emphasis in original.)

*Bell* and *Smith* are distinguishable, however. The above-quoted statement from *Bell* was made in the context of determining whether the circuit court erred in finding that the mother should have primary physical custody of the children unless the father moved within twenty miles of the children's school, in which case custody would revert to 50/50 joint physical and legal custody. The mother in *Bell* argued that the court erred by finding that custody would automatically change if the father moved. This court agreed, holding that the father's residential relocation *alone* could not warrant the modification of custody and that a "springing" joint custody provision was contrary to Arkansas law. That is plainly not what occurred in this case. Instead, Ben moved some months after he had filed his custody petition, and his move was not the sole factor that prompted the court to modify custody.

*Smith*, *supra*, involved a mother's petition to relocate with her children from Lake City to Bentonville, where she had been offered a job, and to modify the joint-custody arrangement as a result. At the time of the hearing, the mother lived in Heber Springs, about an hour and half from Jonesboro where the father lived. The circuit court noted the mother's move first to Bentonville and then to Heber Springs and found a material change in circumstances due to her relocation. The court also cited other material changes in circumstances, including the parties' inability to communicate regarding the children, the husband's controlling nature, and each party's child-care arrangements. On appeal, the father argued that the mother should not have been allowed to use her unilateral relocation

12

as a circumstance warranting modification of custody. This court disagreed. Although the court did state that relocating in order to obtain employment *itself* does not constitute a material change in circumstances, the mother's relocation was not the sole reason for finding that a material change in circumstances occurred.

Likewise, here, Ben's move was not the only reason the circuit court cited in granting his petition to modify custody. In that sense, *Smith* actually supports the circuit court's decision. While Ben's move to a different school district might not have, in isolation, supported a modification of custody,[2] the circuit court also heard testimony by both parties about their inability to communicate, inability to coparent, and disagreements on multiple facets of the children's lives. We therefore cannot agree with Michel's argument that the circuit court erred in citing Ben's move as a factor in its custody-modification determination.

Michel argues further, however, that if Ben's relocation could constitute a change in circumstances, it was not a "material" one. She cites the 2020 temporary order awarding joint custody, even though she lived in El Dorado at the time. She adds that Ben's move to Glen Rose, "a town only thirty minutes from Hot Springs, is immaterial." This assertion is flatly contrary to Michel's testimony at the hearing, however, where she complained that Ben's move to Glen Rose forced her to spend three hours driving to and from school each

---

[2]Contrary to the dissent's suggestion that Ben moved to Glen Rose in order to create a material change in circumstances, we note that Ben did not move until after he had filed his petition to modify custody. It was therefore not one of the bases on which he sought modification, nor was it one of the bases cited by Michel in support of her request for modification.

day she had to pick up MC1. She added that when they originally agreed to joint custody, Ben lived five minutes from her, so his move to Glen Rose "complicated things." We therefore decline to consider her argument on this point because it is entirely inconsistent with the testimony and arguments Michel presented to the circuit court. *See Killingsworth, supra.*

## 2. *Inability to coparent*

In its ruling from the bench, the circuit court cited the lack of cooperation between Michel and Ben. The court stated, "Y'all come at this parenting at two polar opposites on how to do things. . . . Y'all's ideas of how to raise these kids are just so totally different that it's not going to work." Michel argues that the court erred in finding that her and Ben's inability to coparent was a material change in circumstances because it had not changed drastically--and, she claims, had actually improved--since the divorce.

On appeal, Michel cites snippets of testimony in support of her argument that she and Ben agreed on many things and that their communication had improved over the years. Examining the testimony as a whole, however, reveals a different picture. For example, while Michel asserts in her brief that she and Ben "agreed that the children should stay in counseling and that they should see a family therapist," her testimony at the hearing was that "it was kind of decided that we needed to have another therapist for family therapist [and] it was talked about. I don't remember if I messaged him directly about it or not." Asked if she communicated with Ben via telephone, Michel said, "Rarely." Similarly, in her brief, Michel asserts that "by the change-of-custody hearing, she and Ben were better at coparenting than

they had been in the first year of their separation." The actual exchange at the hearing, however, was as follows:

> Q: Isn't it true that you dropped MC2 and MC3 off with Ben to church on your way to take MC1 to Pinnacle Point?
>
> A: Yes.
>
> Q: So why couldn't you have told Ben when you dropped the kids off, he, I'm taking MC1 to Pinnacle Point?
>
> A: Because he would have stopped me.
>
> Q: *Because you disagree about how to handle the children, is that correct?*
>
> A: *Very much.*
>
> Q: So rather than deal with it, you just decided to unilaterally take him?
>
> A: Yes. As a parent I made that decision that that's what my child needed. We had already discussed a safety plan with the therapist and I followed that plan.
>
> Q: You're telling [me] that Mr. Bright can't co-parent with you? Is that the case or is it you not co-parenting with him?
>
> A: I think that back then we both had a lot of trouble trying to figure out how to co-parent. Like I said, he never really parented––co-parented with me when we were together, so that first year trying to navigate how to co-parent was very difficult.

The court also had testimony before it that rather than tell Ben she was taking MC1 for a residential stay at Pinnacle Point, Michel told Ben that she was taking MC1 to buy Ben a Christmas present. Then, when Michel and MC1 were en route to Pinnacle Point and MC1 learned where she was taking him, he jumped from the car and ran into the woods.

15

The police were called to help find him. Michel testified that rather than call Ben to tell him of this emergency, she informed Ben by placing a message on the Our Family Wizard app.

Further, there was testimony from each party critical of the other party's failure to notify the other of the children's medical appointments and health information, school events, and the like. Michel also testified that there were instances she "had not been able to figure out what was going on with the kids" and that she was "very rarely" able to talk to the children when they were with their father.

In addition to the testimony concerning the parties' inability to effectively communicate with one another, the court heard testimony that the parties did not agree concerning where the children went to school (which required a separate hearing for the court to determine), nor did they agree on the proper course of mental-health treatment for the children, the children's discipline, or the appropriate supervision and sleeping arrangements for the children.

Although Michel would appear to prefer that we focus on selected excerpts from her testimony, this court does not examine each finding cited by a circuit court in isolation. *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999). Certain factors, when examined in the aggregate, may support a finding that a change in custody is warranted where each factor, if examined in isolation, would not. *Cline v. Simpson*, 2024 Ark. App. 611, 703 S.W.3d 497. Failure of communication and the inability to cooperate can all constitute a material change in circumstances sufficient to warrant modification of custody. *Self v. Dittmer*, 2021 Ark. App. 85, 619 S.W.3d 43. The evidence described above that was before

16

the circuit court amply supported a finding that Michel and Ben were unable to communicate or cooperate successfully regarding the children. Her suggestions to the contrary essentially amount to an invitation for this court to weigh the evidence differently than the circuit court did, which of course we do not do. *Cline*, *supra*.

### 3. *Other factors cited by the circuit court*

In her final argument concerning the circuit court's material-change-in-circumstances analysis, Michel takes issue with two specific findings: the court's criticism of her for allowing her then-future husband to move in before they were married and the court's crediting the children's testimony regarding where they wanted to live.

Regarding Michel's premarital cohabitation, in his January 2022 petition for change of custody, Ben cited her violation of the court's order prohibiting cohabitation with her boyfriend in the presence of the children as a basis for a change in custody. He stated that he asked Michel not to continue the "live in situation" with her boyfriend but that she continued to permit it, and this led to the children "being exposed to a situation that is not morally responsible." At the hearing, Michel conceded that her current husband, Wesley Cook, had lived with her before they were married, despite the clause in the decree prohibiting overnight romantic guests. She said that she "wanted to make sure that we could all live together before we actually got married [on September 29, 2022]." In its written order, the court cited, among the multiple factors that militated against joint custody, Michel's "failure to follow the court's prohibition on unmarried overnight guests."

On appeal, Michel complains that the court's reliance on this factor evidenced a desire to punish her and cites caselaw holding that custody awards are not made or changed "to punish, reward, or gratify the desires of either parent" and that a "violation of the circuit court's previous orders does not compel a change in custody." *Reynolds v. Reynolds*, 2024 Ark. App. 229, at 8, 687 S.W.3d 584, 590.[3]

As noted above, however, the court's factual findings are not to be taken in isolation. *Hollinger*, *supra*. In its remarks from the bench at the conclusion of the hearing, the court said it was "disappointed that you didn't follow . . . the court's order about romantic partners before you got married to the gentleman that you're married to now. That's not lost on the court." Clearly, the court was not pleased about Michel's decision, but from our de novo review of the record, it appears that the cohabitation was simply part of the overall picture that Michel presented and but one factor in the court's overall decision-making process.

Last, with respect to the material change in circumstances, Michel argues that the circuit court erred in citing the stated preferences of the children, who each testified at the hearing. MC1 testified that he and his siblings were developing a healthier new relationship and that he felt there were "good boundaries" in place at Ben's house to protect him and his siblings. He said things at Michel's house were "not amazing," and he expressed a desire to live with Ben full time and see his mother every other weekend. MC2 spoke to a

---

[3]In *Reynolds*, the circuit court did not find that the mother's cohabitation constituted a change in circumstances. It did, however, hold her in contempt for violating the no-cohabitation provision in the divorce decree.

"complicated" situation but said he felt safer at Ben's house than at Michel's. He added that he wanted to stay full time with his father during the school year and alternate every two weeks between his parents during the summer. MC3 testified that she wanted to spend a month with her mother and then a month with her father. She also said that she wanted her and her brothers to stay together more so they could get along better.

Our law is clear that a child's preference is a factor to be considered in determining custody. Arkansas Code Annotated Section 9-13-101(a)(1)(A)(ii) (Supp. 2023) specifically provides that "in determining the best interest of the child, the court may consider the preferences of the child if the child if of a sufficient age and mental capacity to reason, regardless of chronological age." *See also Skinner v. Shaw*, 2020 Ark. App. 407, at 12, 609 S.W.3d 454, at 461. On appeal, Michel acknowledges that the children's preferences can be factors in the court's best-interest analysis, but "*on their own*, they do not constitute a material change in circumstances." (Emphasis added.) It is apparent that the court did not consider the children's preferences "on their own" but instead as part of its overall consideration of the issue.

Giving the circuit court the deference that is due to it in making decisions regarding modification of custody, we cannot conclude that the court here clearly erred in finding that there had been a material change in circumstances.

B. Best Interest

Finally, Michel argues that the circuit court erred in finding that modification of custody was in the children's best interest because it stated at the hearing that it was "in the

19

best interest of the children to name a parent and change the custody and visitation" and because it based its decision on the preferences of the children. She contends that a court must consider other factors, such as "the psychological relationship between the parents and the child, the need for stability and continuity in the child's relationship with parents and siblings, [and] the past conduct of the parents toward the child" in its best-interest finding. *See Williams v. Williams*, 2019 Ark. App. 186, at 14, 575 S.W.3d 156, 164. She asserts that by simply "naming a parent," the court failed to conduct the necessary analysis and therefore erred in its best-interest determination.

It is true that the order modifying custody states simply that the court found that "[i]t is in the best interest of the minor children that joint custody be terminated." At the hearing, however, the court ran through a litany of facts that supported its findings regarding both the material change in circumstances and the children's best interest. It was not solely based on "the preference of the children," as Michel asserts. Thus, while the order itself did not set forth the court's best-interest analysis, the circuit court's remarks setting out its reasons for modification at the conclusion of the trial were clear that the best interest of the children was considered. When a circuit court's opinion is practically silent regarding findings of fact concerning best interest, we presume that the circuit court made the findings necessary to support its judgment. *Emis v. Emis*, 2017 Ark. App. 372, at 9, 524 S.W.3d 444, 450.

On the whole, we conclude that Michel's argument is essentially that we should weigh the evidence differently than the circuit court did. It is of course well settled that we do not reweigh the evidence on appeal. *Cline*, 2024 Ark. App. 611, 703 S.W.3d 497. After our

review of the court's findings, the record as a whole, and the applicable case law, we conclude that the circuit court's decision to modify the custody arrangement in this case was not clearly erroneous. We therefore affirm.

Affirmed.

VIRDEN, GLADWIN, HARRISON, and MURPHY, JJ., agree.

TUCKER, J., dissents.

CASEY R. TUCKER, Judge, dissenting. I take issue with the circuit court's statement that "*the distance between the homes*" created a material change in circumstance "because the parties lived more than 15 minutes apart" after Ben's move. If that is the case, then Ben should have filed a petition to relocate before moving. While Michel did not cite Ben's relocation as a basis for modification, the circuit court made location a primary factor in finding a material change warranting a change in custody.[1] I cannot support a ruling that rewards Ben's behavior by granting him sole custody when he created the change by relocating without court approval. I strongly disagree that the distance between the parents' homes should have been a factor to support changing custody to Ben.

Just because the court may find a material change in circumstances, it does not automatically require a change in custody; rather, the court must determine whether a change in custody is in the children's best interest. We must not forget that the primary consideration in child-custody cases is the best interest of the children; all other

---

[1]The circuit court stated in its oral ruling that the distance between the parties was alone sufficient to find joint custody was impossible.

considerations are secondary. *McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91. *See also Pace v. Pace*, 2020 Ark. 108, 595 S.W.3d 347.

Having reviewed the evidence,[2] I am convinced that the circuit court erred in changing from joint to sole custody. The circuit court did not discuss the best-interest analysis when it changed to sole custody. The majority does not seem bothered by the lack of attention to this most important issue and instead cites *Emis v. Emis*, 2017 Ark. App. 372, at 9, 524 S.W.3d 444, 450, for the premise that we will presume the circuit court made the findings necessary to support its judgment concerning what is in the best interest of the children when the circuit court's opinion is silent.

Here, the circuit court did not acknowledge, and the majority of this court overlooked, that at the final hearing, the attorney ad litem reported that "these are precious, beautiful children who are sensitive and they have had some really rough few years. They're finally in a place where they're all doing better, they're thriving, and they love their parents. . . . I think you're able to see the progression that the children have been making and how well they're doing, not just with their parents, but in their school and with their friends as well." "*Thriving*" and "*progression*" certainly are not words I would use to describe children who are emotionally affected by any material change of circumstances created by one parent or the other.

---

[2]We should look at the *entire* evidence to determine whether a mistake has been made. *Price v. Price*, 2020 Ark. App. 74, 595 S.W.3d 32.

When we affirm a change in custody without addressing the reasoning for the ruling and acknowledge that the children are thriving and progressing under their current custodial situation, we are simply rubber-stamping the circuit court's order. I believe that when there has been a material change in circumstances, but a change in custody is not in the children's best interest—because they are thriving and progressing under the current custody arrangement—the lower court must equip the parents with certain tools to reduce the areas of conflict as directed by the legislature. *See also* Ark. Code Ann. § 9-13-101(c) (Repl. 2023).

At the end of the first day of the final hearing, because the second day was not going to be for several weeks, the attorney ad litem asked the court to order Michel and Ben to attend family and co-parenting classes. The circuit court refused. Co-parenting classes were also suggested by one of the therapists who testified, and Ben stated that he would be amenable to this type of class. This court should acknowledge that it would have been in the children's best interest to keep joint custody but put in detailed co-parenting provisions and parameters to reduce conflict, such as ordering co-parenting classes as part of the arsenal of tools to better equip Ben and Michel as divorced parents.

This court has affirmed a circuit court's decision to change from sole to joint custody *even after finding that there has been a material change in circumstances because the parents cannot get along. Wallis v. Holsing*, 2023 Ark. App. 137, 661 S.W.3d 284. In *Wallis*, the court stated that *even though the parents cannot get along, it is in the best interest of the children to change to joint custody*. "It is evident that the General Assembly contemplated uncooperative parents when

23

it changed the preference to joint custody." *Pace*, 2020 Ark. 108, at 12, 595 S.W.3d at 354 (Womack, J., concurring).

This case is much simpler. It is in the best interest of these children to maintain joint custody. In the concurring opinion in *Pace, supra*, when discussing the court of appeals, Justice Womack stated that this court's majority had exercised a "low threshold for modification disregard[ing] the express legislative policy favoring joint custody, the appellate standard of review for custody decisions, and the 'child's best interests' analysis." *Id.* at 11, 595 S.W.3d at 353 (Womack, J., concurring).

Instead, the circuit court, to use its own terminology, used a "bazooka" approach and modified joint custody to sole custody. I am left with a definite and firm conviction that a mistake has been made by the circuit court. I would reverse and remand with directions to put in place the means to reduce areas of conflict with specific co-parenting provisions and to address the children's scheduled time with each parent.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellant.

*Benjamin Bright*, pro se appellee.